IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 21, 2004 Session

# CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, ET AL. v. SHELBY COUNTY, TENNESSEE, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005905-01     Kay S. Robilio, Judge**

---

**No. W2003-02942-COA-R3-CV - Filed January 12, 2005**

---

In this case we are asked to construe several instruments related to a parcel of real property. In 1976, Shelby County obtained title to a parcel of property conveyed out of a larger tract and proceeded to construct a water tower on the property. From 1976 to 1982, Shelby County used a gravel road traversing the adjacent lot retained by the original grantor to gain access to the water tower. In 1982, the original grantor proceeded to execute a document purporting to grant Shelby County an easement over the gravel road. The original grantor subsequently conveyed the adjacent parcel to a third party, Highway 64 Partners. In 1995, Shelby County entered into a lease agreement with Verizon, allowing Verizon to install a cellular communications antenna on the water tower and granted Verizon an easement over the gravel road. Highway 64 Partners protested Verizon's use of the gravel road. Verizon filed a declaratory judgment action seeking a declaration of the parties' rights regarding the gravel road. The trial court granted summary judgment to Verizon and Shelby County, and denied summary judgment to Highway 64 Partners. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Edward M. Bearman, Memphis, TN, for Appellant, Highway 64 Partners, LLP

Shelby R. Grubbs, Ryan A. Kurtz, Chattanooga, for Appellee Cellco Partnership d/b/a Verizon Wireless

Gordon B. Olswing, Memphis, TN, for Appellees, Shelby County, Tennessee and the Light, Gas And Water Division of the City of Memphis, TN

**OPINION**

**I.**

**Factual Background and Procedural History**

This appeal involves certain real property originally owned by Stonebridge Venture, Limited ("Stonebridge"), located in Shelby County, Tennessee. On September 16, 1976, Stonebridge conveyed, by warranty deed (hereinafter referred to as the "1976 Deed") properly recorded in the Shelby County Register's Office under number L6 5076, a portion of a larger parcel of land to Shelby County. The 1976 Deed provided, in relevant part, as follows:

> TO HAVE AND TO HOLD the aforesaid real estate together with all the appurtenances and hereditaments thereunto belonging or in any wise appertaining unto the said party of the second part, its heirs, successors and assigns, *in fee simple forever, as long as said premises is used as a water storage tank or for public utilities*, in the event that said property shall be abandoned for said purposes, it shall revert to the grantor, and this deed shall become forfeited and the premises herein described and all the rights herein conveyed shall at once revert to and revest in and become the property of grantor, his successors or assign without any declaration of forfeiture or act of re-entry, and without any other act by grantor to be performed. . . .

In addition, the 1976 Deed purported to grant Shelby County what amounted to, in essence, three easements; two "Pipe Line" easements and a "temporary construction easement" set to "expire and terminate upon installation of easement improvements or three (3) years from the date of this instrument whichever comes first." Subsequent to acquiring the land, Shelby County proceeded to build a water tower (hereinafter referred to as the "Stonebridge Water Tower") on the property.[1] In addition, the Shelby County Fire Department installed a communications antenna on the tower.

At the time of conveyance, and at all times thereafter, the subject property acquired by Shelby County was landlocked.[2] After acquiring the property in 1976, Shelby County gained access to the parcel by utilizing a gravel road (hereinafter referred to as the "Gravel Access Road") which traversed that portion of the Stonebridge property not conveyed in the 1976 Deed.

---

[1] Construction on the Stonebridge Water Tower began in 1976, and the project was completed in 1978.

[2] When Shelby County acquired the property, the land was bordered on the north by Interstate 40; on the east by land now occupied by Stonebridge Golf Course; and on the south and west by the remainder of the property retained by Stonebridge, now owned by Appellant.

On September 10, 1982, Stonebridge executed a document entitled "Easement" (hereinafter referred to as the "1982 Easement"), which Stonebridge recorded in the Shelby County Register's Office under number T5 6633. The 1982 Easement contained the following relevant language:

> WHEREAS, by warranty deed entered into the 16th day of September, 1976 and recorded as instrument L6 5076 . . . granted to Shelby County, Tennessee certain real estate for the construction of an elevated water storage tank; and
>
> WHEREAS, this deed failed to grant a right-of-way easement giving access to said tank for the purpose of its maintenance;
>
> NOW, THEREFORE, for and in consideration of Ten Dollars ($10.00) cash in hand paid, the receipt of which is hereby acknowledged, Stonebridge hereby grants to Shelby County a *perpetual easement over that portion of grantor's land which it is necessary to use as a right-of-way easement for the maintenance and repair of said water tank.* . . .
>
> . . . .
>
> Which easement shall run with grantor's land and the title thereto, and be binding on the grantor and its heirs and successors and any person who shall hereafter acquire title to grantor's property. . . .

The 1982 Easement went on to describe, in essence, the Gravel Access Road utilized by Shelby County since acquiring the property in 1976. Only the president for Stonebridge signed the 1982 Easement. Shelby County denies ever assenting to the 1982 Easement or being bound by its terms.

On March 26, 1985, Stonebridge conveyed to Highway 64 Partners ("Highway 64"), by warranty deed (hereinafter referred to as the "1995 Deed") recorded in the Shelby County Register's Office under number W4 0979, the property adjacent to the parcel at issue, over which the Gravel Access Road traversed, and which Stonebridge previously conveyed to Shelby County. The 1985 Deed contained the following relevant language:

> And the said party of the first part does hereby covenant with the said party of the second part that it is lawfully seized in fee the aforedescribed real estate; that it has a good right to sell and convey the same; that the same is unencumbered, except for . . . easements, if any for public utilities serving the Property, *easements of record* as Instruments Nos. E2 1385, *L6 5076* [the 1976 Deed], *and T5 6633* [the 1982 Easement] in the Shelby County Register's Office. . . .

On August 22, 1995, Shelby County entered into a Lease Agreement (hereinafter referred to as the "Verizon Lease") with Memphis Cellular Telephone Company (hereinafter referred to as "Verizon")[3] which contained the following relevant language:

> WHEREAS, Lessor, represents that it is the owner of the real property on which the Stonebridge-area water tower is located in Shelby County, Tennessee, being the tract described in Instrument #L6 5076 [1976 Deed], of record in the Register's Office of Shelby County, Tennessee. . . .
>
> WHEREAS, Lessor has agreed to lease to Lessee the following: (a) the right and license to erect a new radio communications tower located (i) on or near the top of the water tower located on the Land, or (ii) in a circular fashion on the water tower support structure (tube), or (iii) on a separate monopole tower adjacent to the water tower; (b) the Building Site, and (c) *a non-exclusive easement (the "Easement") for ingress, egress and utilities as described on "Exhibit A,"* (the said right and license, Building Site and easement being referred to collectively herein as the "Property"); and
>
> . . . .
>
> NOW, THEREFORE, for valuable consideration, the sufficiency of which is hereby acknowledged, the parties enter into this Lease upon the terms and mutual covenants as set forth herein:
>
> . . . .
>
> 4.      Warranty of Title:      Lessor represents and warrants that it is seized with good and marketable title to the Property, that except as set forth in this section, the same is unencumbered, and that the Lessor has full authority and right to enter into and execute this Lease. Lessor further represents and warrants that there are and will be no encumbrances, liens or impediments of title or clouds upon the title of the Property which would interfere with the Lessee's intended use of the Property generally.
>
> 5.      Communications Equipment: . . . . Lessor hereby further grants to Lessee *a nonexclusive easement for ingress and egress to the Property*, to the extent that such does not unreasonably interfere with Lessor's normal business operations, seven (7) days a week, twenty four (24) hours a day, on foot or by motor vehicle, including trucks, for the installation and maintenance of utility wires, cables, conduits, and pipes over, under or along a right of way reasonably satisfactory for Lessee's use and extending from the

---

[3] Cellco Partnership, d/b/a Verizon Wireless ("Verizon"), became the successor in interest to Memphis Cellular Telephone Company by acquiring its rights and obligations under the lease.

nearest public right of way to the Property.  Lessor further agrees to execute such instruments or easements for the benefit of the Property at any time during the term hereof which Lessee may reasonably request to provide ingress and egress to and from the Property necessary to construct, maintain or operate the Communications Equipment and, if Lessee deems necessary, for the provision of all necessary utilities to serve the Communications Equipment without additional consideration. . . .

. . . .

7.  Liability and Indemnity:  Each of Lessee and Lessor agree to use and occupy their respective property at their own respective risk and hereby release the other from all claims for any damage or injury suffered by it. . . .

Attached to the Verizon Lease was "Exhibit A" containing a document entitled "Description of Easement," which purported to set the easement granted to Verizon as follows: "Being a 20 foot wide right-of-way easement across the Highway 64 Partners property as recorded in Instrument Number T5-6633 [the 1982 Easement]. . . ."  After installing a cellular communications antenna on the Stonebridge Water Tower in 1995, Verizon utilized the Gravel Access Road across the property now owned by Highway 64 to service the antenna.  The initial term of the Verizon Lease was five years, and Verizon agreed to pay Shelby County $1,600.00 per month over the term of the lease.

In 1999, Memphis Light, Gas & Water ("MLGW") purchased the Stonebridge Water Tower from Shelby County, although Shelby County continues to be listed as the owner of record of the parcel of land in question.  As a result, MLGW assumed all the rights and obligations of Shelby County under the Verizon Lease.  Together, Shelby County and MLGW have utilized the Gravel Access Road continuously from 1976 to present in reaching the Stonebridge Water Tower.[4]

In 2000, Powertel, another cellular communications provider, contacted Michael Greenberg, CEO of a Memphis real estate company acting as agent for Highway 64, seeking to place a cellular antenna on the Stonebridge Water Tower.  Highway 64 and Powertel began negotiating an agreement concerning an easement across Highway 64's property.[5]  During these negotiations, Highway 64 learned that Verizon had installed cellular equipment on the Stonebridge Water Tower.  Highway 64 notified Verizon of its findings and accused Verizon of trespassing, and Highway 64 attempted to reach an agreement with Verizon on compensation for using the Gravel Access Road. When these negotiations proved fruitless, Highway 64 threatened to file suit against Verizon.

---

[4] From 1976 to present, Shelby County and its successor, MLGW, have continued to maintain the Stonebridge Water Tower on the property.  Charles Pickel ("Mr. Pickel"), a manager for Memphis Light, Gas & Water, testified that the Stonebridge Water Tower is serviced once or twice a month.

[5] Ultimately, on December 29, 2000, Highway 64 executed a lease granting Powertel a right-of-way over its property.

On September 24, 2001, Verizon filed a complaint against Shelby County, MLGW, and Highway 64 in the Circuit Court of Shelby County seeking the following: (1) a declaratory judgment that Verizon has the right to use the Gravel Access Road or, in the alternative, a declaratory judgment that Shelby County and/or MLGW must provide Verizon with access to the Stonebridge Water Tower; (2) a judgment in favor of Verizon payable by Shelby County and/or MLGW to cover amounts paid, if any, to Highway 64 in maintaining access to the Stonebridge Water Tower; (3) indemnity from Shelby County and/or MLGW to cover any liability Verizon incurred from third parties as a result of a breach of the Verizon Lease; and (4) an injunction preventing Highway 64 from interfering with Verizon's use of the Gravel Access Road.

Highway 64 filed an answer to the complaint along with a counterclaim against Verizon seeking damages for trespass and injunctive relief to prevent further trespass by Verizon. On January 21, 2003, Highway 64 filed a motion for summary judgment against Verizon seeking a ruling that Verizon's use of the Gravel Access Road constituted trespass. On April 7, 2003, Verizon submitted its cross-motion for summary judgment against Highway 64 asking that Highway 64's counterclaim be dismissed. On April 11, 2003, Verizon filed a motion for partial summary judgment against Shelby County and MLGW seeking a ruling that Verizon had a right to indemnity from Shelby County and/or MLGW. On May 20, 2003, Shelby County and MLGW filed a cross-motion for summary judgment seeking an order that Verizon's use of the Gravel Access Road did not constitute trespass; Highway 64 is not entitled to damages; and Shelby County, MLGW, and Verizon are entitled to use the Gravel Access Road to reach the Stonebridge Water Tower.

The circuit court conducted a hearing on the parties' motions on July 22, 2003. On October 31, 2003, the trial court issued its findings of fact and conclusions of law followed by an order entered on December 2, 2003, which contained, in relevant part, the following ruling:

> 1.      The motion for summary judgment filed on behalf of Verizon seeking a declaration and ruling that it is entitled to use, without compensation to or separate agreement with Highway 64, the portion of Highway 64's property previously used by Shelby County, MLGW and Verizon, the description of which is more or less the same as that easement described within the certain easement document recorded as Instrument Number T5-6633 in the Shelby County Register's Office ("Easement"), is granted.
> 2.      The motions for summary judgment filed on behalf of Shelby County and MLGW seeking a ruling that Shelby County, its lessees, assigns and successors (including MLGW and Verizon), are entitled to use the Easement without compensation to or a separate agreement with Highway 64, is granted.
> 3.      The motion for summary judgment filed on behalf of Highway 64 against Verizon seeking a ruling that Verizon's use of the Easement constitutes a trespass is denied.
> 4.      The motion for partial summary judgment filed on behalf of

Verizon seeking indemnification from Shelby County and MLGW is denied.

. . . .

6.      Verizon, as lessee, assignee or successor of Shelby County (pursuant to the terms of the certain lease agreement dated August 22, 1995 by and between Memphis Cellular Telephone Company and Shelby County), is entitled to use the Easement, without compensation to or separate agreement with Highway 64, for the purpose of ingress and egress to the real property conveyed to Shelby County as more particularly described in Instrument Number L6-5076 in the Shelby County Register's Office.

7.      Highway 64's counterclaim is dismissed with prejudice.

Highway 64 filed a timely notice of appeal to this Court presenting the following issue for our review:

I.      Whether the trial court erred in awarding summary judgment to Verizon and Shelby County/MLGW, while denying summary judgment to Highway 64.

We are also asked to review the following alternative issue raised by Verizon Wireless on appeal:

II.     In the event this Court determines that Shelby County did not properly convey a right of access to the Stonebridge Water Tower to Verizon, whether the trial court erred in denying Verizon a declaratory order setting forth Shelby County's obligations under the Verizon Lease.

For the reasons set forth herein, we affirm the ruling of the trial court.

## II.

## Standard of Review

The facts in this case are undisputed, and the issues presented to this Court primarily involve the interpretation and construction of written instruments. "Issues relating to the interpretation of written instruments involve legal rather than factual issues." *The Point, LLC v. Lake Mgmt. Ass'n, Inc.*, 50 S.W.3d 471, 474 (Tenn. Ct. App. 2000). Accordingly, summary judgment is an appropriate means of resolving such legal issues. *Id.*

When we review a grant of summary judgment by a lower court, we apply the following standard of review:

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry

-7-

involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tenn. R. Civ. P. 56.03 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *Byrd*, 847 S.W.2d at 215.

*Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

## III.
## Summary Judgment

### A.
### Construction of the 1976 Deed

The trial court found that the 1976 Deed conveyed to Shelby County a fee simple interest in the subject property. On appeal, Highway 64 argues that the 1976 Deed did not provide Shelby County unrestricted ownership of the property. Rather, Shelby County obtained a fee simple determinable limited by the language in the deed.

"The overriding purpose of any deed interpretation is the determination of the grantor's intent of the conveyance." *Hall v. Hall*, 604 S.W.2d 851, 853 (Tenn. 1980) (citing *Collins v. Smithson*, 585 S.W.2d 598 (Tenn. 1979)); *see also Quarles v. Arthur*, 231 S.W.2d 589, 591 (Tenn. Ct. App. 1950). In ascertaining the grantor's intent, we begin with the language of the deed itself and the circumstances surrounding its creation. *Hutchinson v. Bd.*, 250 S.W.2d 82, 84 (Tenn. 1952); *LaRue v. Greene County Bank*, 166 S.W.2d 1044, 1048 (Tenn. 1942). In construing the language in a written instrument, "the words expressing the party's intention should be given the usual, natural and ordinary meaning." *Ballard v. N. Am. Life & Casualty Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983) (citing *Moore v. Life & Casualty Ins. Co.*, 162 Tenn. 682, 40 S.W.2d 403 (Tenn. 1931)). In determining what estate the deed purports to convey, we attempt to constrain our analysis to the four

corners of the instrument without regard to the technical and formal divisions contained therein. *Mountain City Missionary Baptist Church v. Wagner*, 249 S.W.2d 875, 876 (Tenn. 1952).

The 1976 Deed provides that Shelby County shall take the subject property "in fee simple forever, as long as said premises is used as a water storage tank or for public utilities, in the event that said property shall be abandoned for said purposes, it shall revert to the grantor." "A deed conveys all of a grantor's estate or interest in property unless it clearly expresses an intent to limit the estate or interest being conveyed." *Capshaw v. City of Cookeville*, No. 01-A-01-9209-CH-00359, 1993 Tenn. App. LEXIS 300, at *7 (Tenn. Ct. App. Apr. 21, 1993); Tenn. Code Ann. § 66-5-101 (2003). A fee simple determinable is an estate which (1) creates an estate in fee simple and (2) provides for its expiration upon the happening of an event stated within the deed. *Yarbrough v. Yarbrough*, 269 S.W. 36, 37–38 (Tenn. 1924); *see also Powell v. Sumner County Bd. of Educ.*, No. 01-A-01-9005-CH-00190, 1990 Tenn. App. LEXIS 795, at *3–4 (Tenn. Ct. App. Nov. 7, 1990). When the event stated occurs, the estate reverts to the grantor. *Yarbrough*, 269 S.W. at 38; *Mitchell v. Jerrolds*, No. 1, 1991 Tenn. App. LEXIS 201, at *6 (Tenn. Ct. App. Mar. 26, 1991).

While specific wording is not required to create a fee simple determinable, *Bailey v. Inter-Mountain Tel. Co., Inc.*, 303 S.W.2d 726, 728 (Tenn. 1957), use of the above cited language signifies an intention by the grantor to create such an estate. *See Capshaw*, 1993 Tenn. App. LEXIS 300, at *7–8; *Mountain City Missionary Baptist Church*, 249 S.W.2d at 876; 26A C.J.S. *Deeds* § 246 (2001) (noting that a fee simple determinable is usually signified by use of words such as "so long as," "until," "during," etc.). Highway 64 concedes, and we agree, that the 1976 Deed granted Shelby County a fee simple determinable. "Such 'determinable fee' while it continues, has all the incidents of a fee-simple estate, except insofar as these incidents are expressly restricted by the limitation over." *Mountain City Missionary Baptist Church*, 249 S.W.2d at 876.

### B.
### *The Easement Created by the 1976 Deed*

Our review of the record must begin with the 1976 Deed, whereby Stonebridge conveyed the parcel in question to Shelby County. The trial court made the following factual findings regarding the property at issue: (1) the property containing the Stonebridge Water Tower and the adjoining property now owned by Highway 64 were part of a single tract of land owned by a common grantor, Stonebridge, and (2) when Stonebridge conveyed the parcel containing the Stonebridge Water Tower to Shelby County, said property was landlocked. In turn, the trial court concluded that, pursuant to the 1976 Deed, Shelby County obtained an easement to use the Gravel Access Road traversing the property previously owned by Stonebridge and now owned by Highway 64. Although it is not entirely clear from the trial court's conclusions of law, the trial court apparently relied on several legal theories to justify its finding that the 1976 Deed created an easement in favor of Shelby County. These included, as we perceive them, the following: (1) the

easement became an appurtenance[6] necessary to Shelby County's use and enjoyment of the parcel conveyed, (2) creation of an easement by implication, and (3) creation of an easement by necessity.

"An easement is a right an owner has to some lawful use of the real property of another." *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996) (citing *Brew v. Van Deman*, 53 Tenn. (6 Heisk) 433 (1871)). Easements may take many different forms, which this Court summarized in *Pevear* as follows:

> Easements can be created in several ways in Tennessee, including: (1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain. Easements can be divided into two broad classes, easements appurtenant, and easements in gross. In an easement appurtenant, there are 2 tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement. Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel. An easement appurtenant to land is favored over an easement in gross in Tennessee.

*Id*. at 115–16 (citing *Goetz v. Knoxville Power & Light Co.*, 290 S.W. 409 (Tenn. 1926)); *see also The Point, LLC v. Lake Mgmt. Ass'n, Inc.*, 50 S.W.3d 471, 478 (Tenn. Ct. App. 2000).

It is clear from reviewing the record that the 1976 Deed does not expressly grant Shelby County an easement over the Gravel Access Road. Therefore, in determining whether an easement was nevertheless created, we must resort to alternative theories. "An easement by implication arises upon severance of a single piece of land into separately owned parts as an inference of the intention

---

[6] The trial court made the following conclusion of law:

> "Tennessee Courts, in giving legal construction to deeds, and in determining what rights and interests are conveyed by the grantor or to the grantee pursuant to a deed, have consistently and continually found that a deed to a particular tract of property includes an easement in grantor's adjoining property. In making such findings, the Courts have found that whenever one conveys property by deed, he also conveys to the grantee all apparent and necessary easements. *LaRue v. Green[e] County Bank*, [166] S.W.2d 1044 (Tenn. [1942]); *Wall and Co. v. Cloud*, 22 Tenn. [(3 Hum)181, 182 (1842)]; and *The Pointe, LLC* [v. *Lake Mgmt. Ass'n, Inc.*, 50 S.W.3d 471, 474 (Tenn. Ct. App. 2000)].

It appears as though the trial court based its conclusion of law partially on the existence of an express easement in the deed by relying upon the language in the habendum clause of the 1976 Deed, where the grantor conveyed "the aforesaid real estate together with all the *appurtenances*." (emphasis added). "Land does not as a general rule pass under a conveyance as an appurtenance to land." 26A C.J.S. *Deeds* § 239 (2001). Tennessee recognizes the creation of easements by express grant, reservation, implication, prescription, estoppel, and eminent domain. *Pevear v. Hunt*, 924 S.W.2d 114, 115–16 (Tenn. 1996). The cases relied on by the trial court, while recognizing that an easement can be appurtenant to the land conveyed, speak of such easements in one of the forms mentioned in *Pevear*.

of the parties to the conveyance." *Barrett v. Hill*, No. 01A01-9806-CV-00295, 1999 Tenn. App. LEXIS 879, at *5 (Tenn. Ct. App. Oct. 7, 1999). "Easements by implication . . . are exceptions to the general rule that easements must be created by either an express grant or by prescription." *Barrett*, 1999 Tenn. App. LEXIS 879, at *6 (citations omitted). The law does not favor such easements, and the courts of this state have expressed a policy in favor of restricting the use of the doctrine. *Cole v. Dych*, 535 S.W.2d 315, 318 (Tenn. 1976); *see also Lively v. Noe*, 460 S.W.2d 852, 854 (Tenn. Ct. App. 1970) (citations omitted). In any event, their use has been long recognized by the courts of this state. *Lively*, 460 S.W.2d at 854. Implied easements are grounded in the policy "that a grantor intends to include in a conveyance whatever is necessary for the beneficial use and enjoyment of the property conveyed." *Adcock v. Adcock*, No. 01-A-01-9505-CH-00220, 1995 Tenn. App. LEXIS 741, at *9 (Tenn. Ct. App. Nov. 15, 1995) (citing 25 Am. Jur. 2d *Easements and Licenses* § 24 (1966); *LaRue v. Greene County Bank*, 166 S.W.2d 1044, 1049 (Tenn. 1942)). "The Statute of Frauds does not prohibit the creation of an implied easement because such servitudes are considered to arise by operation of law or to be part of a written conveyance between the parties." *M.C. Headrick & Son Enters., Inc. v. Preston*, No. 124, 1989 Tenn. App. LEXIS 277, at *11 (Tenn. Ct. App. Apr. 20, 1989).

"An implied easement appurtenant should only arise where it is of such necessity that we may presume it was within the contemplation of the parties to a conveyance." *The Point, LLC v. Lake Mgmt. Ass'n, Inc.*, 50 S.W.3d 471, 478 (Tenn. Ct. App. 2000); *see also LaRue*, 166 S.W.2d at 1049. In order to find the existence of an easement by implication, the following elements must be present:

> (1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been long established and obvious or manifest as to show that it was meant to be permanent; and (3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained. Another essential is sometimes added to these — namely, that the servitude be continuous, as distinguished from temporary or occassional.

*Johnson v. Headrick*, 237 S.W.2d 567, 570 (Tenn. Ct. App. 1948) (citations omitted); *see also Wightman v. Clouse*, No. E2002-00318-COA-R3-CV, 2003 Tenn. App. LEXIS 225, at *2–3 (Tenn. Ct. App. Mar. 20, 2003); *The Point, LLC*, 50 S.W.3d at 478; *Barrett*, 1999 Tenn. App. LEXIS 879, at *7 (recognizing the fourth element as essential to establishing an easement by necessity). The party seeking to establish an easement by implication, in this case Shelby County and its successor MLGW, bears the burden of showing the existence of all the essential elements. *Line v. Miller*, 309 S.W.2d 376, 377 (Tenn. Ct. App. 1957); *see also Fowler v. Wilbanks*, 48 S.W.3d 738, 741 (Tenn. Ct. App. 2000); *The Point, LLC*, 50 S.W.3d at 478.

The record reveals, and the parties do not dispute, that the first element, regarding separation of title, has been satisfied since Shelby County obtained title to the parcel at issue out of a larger tract previously owned by Stonebridge. *See* 28A C.J.S. *Easements* § 64 (1996). Turning to the second element, Shelby County and MLGW needed to establish the following:

In order to show that the preexisting use was permanent, the owner of the dominant estate must prove that the common owner used the premises in an altered condition long enough *before the conveyance*. The owner of the dominant estate is not required to prove that his use of the claimed easement occurred before the common owner severed the estates to show the permanency of the claimed easement. Apparent or obvious use in this connection does not mean actual visibility, but rather susceptibility of ascertainment on reasonable inspection by persons ordinarily conversant with the subject.

A mere temporary provision or arrangement made for the convenience of the entire estate will not constitute that degree of permanency required to burden the property with a continuance of the use when divided or separated by conveyance to different parties.

In determining whether a permanent quasi easement existed at the time of severance, it is permissible to look at the intendment of the parties *at the time of severance*.

28A C.J.S. *Easements* § 66 (1996) (emphasis added). The "obvious" aspect of this element may be shown by establishing there was "something upon the tract which was either visible or in the nature of a permanent artificial structure." 28A C.J.S. *Easements* § 67 (1996). To show the use was "continuous," "the prior use must have been in existence at the time of severance and such a use must have been continued after the severance." 28A C.J.S. *Easements* § 68 (1996).

Upon reviewing the record, we note that the trial court made no specific factual findings regarding this element, other than to conclude that "[t]he grant of way across the grantor's adjoining property is presumed as a matter of law to have been intended by the parties to the 1976 Warranty Deed." The record reflects that both the parties and the trial court were preoccupied with the use of the Gravel Access Road by Shelby County subsequent to obtaining title to the parcel at issue in 1976. A perfunctory statement of use *after the conveyance* is not enough.

Unlike express easements, [implied easements] take into account the *prior use made of conveyed land*. They ordain the perpetuation of that use on the general principle that property is usually passed along with its burdens and that the parties, as evidenced by their actions, understood that their property was thus conveyed.

*Barrett v. Hill*, No. 01A01-9806-CV-00295, 1999 Tenn. App. LEXIS 879, at *6 (Tenn. Ct. App. Oct. 7, 1999) (citations omitted) (emphasis added); *see also Rhoades v. Taylor*, No. M2001-00643-COA-R3-CV, 2003 Tenn. App. LEXIS 177, at *8 (Tenn. Ct. App. Mar. 4, 2003).

The trial court inferred an intent on the part of the grantor to create an implied easement by referring to the 1985 Deed, which labeled the 1976 Deed an easement. Any reference to

-12-

subsequently executed instruments in order to glean the grantor's intent at the time of conveyancing was in error. *See* 28A C.J.S. *Easements* § 66 (1996) (stating that the intent of the grantor *at the time of severance* is the determinative factor regarding the second element). "The requirements for the establishment of an easement by implication must be strictly adhered to." 28A C.J.S. *Easements* § 63 (1996). It may very well be that the Gravel Access Road existed years prior to the 1976 Deed conveying the subject parcel to Shelby County. It is just as likely, however, that the Gravel Access Road, based on the record before this Court, was constructed the day prior to the 1976 Deed. It is not our province to presume facts where none exist in the record. Accordingly, any argument that, pursuant to the 1976 Deed, Shelby County and its successors in interest obtained an easement by implication to use the Gravel Access Road must fail. *Compare Peach v. Medlin*, No. W2003-02152-COA-R3-CV, 2004 Tenn. App. LEXIS 302, at *23–24 (Tenn. Ct. App. Apr. 28, 2004) (refusing to find an easement by implication where the record revealed "no evidence to indicate the use of the road prior to separation of the title was 'so long continued and obvious or manifest as to show that it was meant to be permanent'") *with Buck v. Avent*, No. W2003-00934-COA-R3-CV, 2004 Tenn. App. LEXIS 637, at *28–29 (finding an easement by implication where testimony was presented showing prior continued use of the easement in question), *Rhoades v. Taylor*, No. M2001-00643-COA-R3-CV, 2003 Tenn. App. LEXIS 177, at *10–11 (affirming the trial court's finding of an easement by implication where testimony at trial established prior use), *and Fowler v. Wilbanks*, 48 S.W.3d 738, 741 (Tenn. Ct. App. 2000) (noting the creation of an easement by implication where party established the parcel was landlocked and testimony showed "the disputed road has been in existence for 35 years").

Nevertheless, our inquiry does not end here. "A common law way of necessity is a type of easement by implication and 'rests on the implication that the parties intended and agreed to provide for such a way.'"[7] *Gowan v. Crawford*, 599 So.2d 619, 621 (Ala. 1992) (quoting *Bull v. Salsman*, 435 So.2d 27, 29 (Ala. 1983)). As opposed to an easement by implication, which requires proof of a pre-existing route of access at the time of severance, an easement by necessity allows for the establishment of an easement of way where one previously never existed. *Burdess v. United States*, 553 F. Supp. 646, 650 (E.D. Ark. 1982); *see also* 28A C.J.S. *Easements* § 91 (1996). "The implication of an easement of necessity is an application of the rule that wherever one conveys property he also conveys whatever is necessary for its beneficial use and enjoyment, and retains whatever is necessary for the use of the land retained." 28A C.J.S. *Easements* § 91 (1996); *see also LaRue v. Greene County Bank*, 166 S.W.2d 1044, 1049 (Tenn. 1942); *Wall & Co. v. Cloud*, 22 Tenn.

---

[7] A common law easement by necessity is not to be confused with a statutory easement by necessity provided for under Tennessee Law. Tenn. Code Ann. § 54-14-101 (2003); *see also Barge v. Sadler*, 70 S.W.3d 683, 688 (Tenn. 2002). While the legislature possesses the plenary power to abrogate the common law by statutory enactment, the existence of a statute in and of itself will not repeal a common law right absent a clear legislative statement expressing an intent to do so. *Lavin v. Jordon*, 16 S.W.3d 362, 368 (Tenn. 2000). Section 54-14-101 of the Tennessee Code does not contain such a legislative directive. *See Powell v. Miller*, 785 S.W.2d 37, 39 (Ark. 1990) (interpreting the Arkansas version of section 54-14-101 of the Tennessee Code and stating that "[t]he language of the statute here does not indicate that it was intended to overrule the common law remedy of granting a 'way of necessity'"). Our case law supports this conclusion, recognizing the existence of a common law easement by necessity in Tennessee. *Page v. Fuchs*, No. W1999-00702-COA-R3-CV, 2000 Tenn. App. LEXIS 375, at *12–13 (Tenn. Ct. App. June 6, 2000) (noting the differences between a common law easement by necessity and a statutory easement by necessity).

(3 Hum) 181, 183–84 (Tenn. 1842). This Court has recognized that access to one's property is so essential to the full enjoyment of that property that "a clear presumption [arises] in favor [of the grantee] as the owner of said remaining tract of land . . . that such easement was of such necessity that an implied reservation thereof must be presumed to have been within the contemplation of the parties at the time of said conveyance." *Harris v. Gray*, 188 S.W.2d 933, 935 (Tenn. Ct. App. 1945).

In order to find the creation of an easement by necessity, Shelby County and MLGW must show the following:

> The prerequisites to the creation of an easement by necessity are: 1) the titles to the two tracts in question must have been held by one person; 2) the unity of title must have been severed by a conveyance of one of the tracts; 3) the easement must be necessary in order for the owner of the dominant tenement to use his land with the necessity existing both at the time of the severance of title and the time of exercise of the easement.

*Powell v. Miller*, 785 S.W.2d 37, 39 (Ark. 1990) (citing *Burdess v. United States*, 553 F. Supp. 646, 649–50 (E.D. Ark. 1982)); *see also Morris v. Simmons*, 909 S.W.2d 441, 444 (Tenn. Ct. App. 1993). The first and second elements are satisfied in this case since the parcel now owned by Shelby County originated by deed from a larger tract previously owned by Stonebridge.

The third element, regarding necessity, arises when the conveyance results in the dominant parcel becoming landlocked. 28A C.J.S. *Easements* § 93 (1996); *see also Thompson v. Hulse*, No. E1999-02474-COA-R3-CV, 2000 Tenn. App. LEXIS 31, at *15–16 (Tenn. Ct. App. Jan. 26, 2000); *Morris v. Simmons*, 909 S.W.2d 441, 444 (Tenn. Ct. App. 1993); *Whitwell v. White*, 529 S.W.2d 228, 232 (Tenn. Ct. App. 1974). On appeal, Highway 64 argues this element is not satisfied in this case because, following the delivery of the 1976 Deed, Shelby County did not obtain a landlocked parcel. In support of this contention, Highway 64 directs our attention to the language in the 1976 Deed itself, where Stonebridge expressly granted Shelby County two "pipeline" easements and a "construction" easement. Highway 64 acknowledges that these express easements, according to the deed's language, were to expire in 1979. However, Highway 64, relying on the deposition testimony of Mr. Pickel showing he used these easements, argues these easements establish that Shelby County did not obtain a landlocked parcel. Finally, since these easements were created by express grant, Highway 64 notes that "the paramount rule obtains that the intention of the parties is controlling as that intention is found to be evidenced by the language of the deed and the circumstances surrounding the conveyance." *Lynn v. Turpin*, 215 S.W.2d 794, 796 (Tenn. 1948); *see also Foshee v. Brigman*, 129 S.W.2d 207, 208 (Tenn. 1939).

Tennessee does not require the existence of strict necessity, and we may find the existence of an easement by necessity where such easements is "of such reasonable necessity to the full enjoyment of the dominant tenement." *LaRue v. Greene County Bank*, 166 S.W.2d 1044, 1050 (Tenn. 1942); *see also Harris v. Gray*, 188 S.W.2d 933, 934–35 (Tenn. Ct. App. 1945). However,

"[t]he degree of necessity must be more than mere convenience." *Riffle v. Worthen*, 939 S.W.2d 294, 298 (Ark. 1997) (citing *Brandenburg v. Brooks*, 576 S.W.2d 196 (Ark. 1979)). "A way of necessity will not be implied where claimant has another reasonable or practicable mode of ingress and egress." 28A C.J.S. *Easements* § 97 (1996).

In the instant case, we find that the 1976 Deed created an easement by necessity in the subject parcel, thereby permitting Shelby County an easement of way over the Gravel Access Road for ingress and egress. The need to use the Gravel Access Road to obtain access to the Stonebridge Water Tower constitutes more than a matter of mere convenience. The easements in the 1976 Deed only provided a temporary means of access to the property, and they did not provide a convenient and adequate outlet to a public street. *See City of Whitwell v. White*, 529 S.W.2d 228, 234 (Tenn. Ct. App. 1974). The record supports our decision on this issue. At the time of the 1976 Deed, the golf course adjacent to the parcel in question was under construction. Therefore, the grantor was aware that, once the golf course was completed, the easements set forth in the deed would no longer provide an adequate means of ingress and egress. This is evidenced by the deed itself, which provides the easements were set to expire in 1979. Mr. Pickel did testify in his deposition that he used the easements expressly provided for in the 1976 Deed, however, he did so in the furtherance of his duties at MLGW, which required him to examine and inspect the installation and construction of the water main being installed across the easements. Even though Mr. Pickel testified that he did not begin to use the Gravel Access Road until 1978 or 1979, the record reveals that Shelby County used the Gravel Access Road to gain access to the Stonebridge Water Tower in 1976 when it acquired the property. Accordingly, Shelby County obtained an easement by necessity over the Gravel Access Road to reach the Stonebridge Water Tower.

## C.
### The Legal Effect of the 1982 Easement

The trial court found that the 1982 Easement "[did] not diminish or defeat the rights of the parties previously obtained pursuant to the 1976 Warranty Deed." In fact, the trial court concluded that the 1982 Easement failed to comply with the statute of frauds because Shelby County did not sign the document. Conversely, Highway 64 contends that the 1982 Easement governs and sets forth the parameters of the right of way at issue. In addition, Highway 64 argues the statute of frauds, while applicable, has been complied with because the party to be charged, Stonebridge, signed the instrument. Shelby County and Verizon argue the party to be charged is Shelby County since Highway 64 is attempting to enforce the easement against them. Since Shelby County did not sign the instrument, Verizon and Shelby County argue the statute of frauds applies making the document of no effect.

It is well settled that an express easement, being an interest in land, must comply with the statute of frauds, codified at section 29-2-101 of the Tennessee Code. *Daugherty v. Toomey*, 222 S.W.2d 197, 201 (Tenn. 1949); *Nunnelly v. S. Iron. Co.*, 29 S.W. 361, 365–66 (Tenn. 1894); *Miller v. Street*, 663 S.W.2d 797, 798 (Tenn. Ct. App. 1983). The statute provides that "[n]o action shall be brought . . . [u]pon any contract for the sale of lands . . . unless the promise or agreement . . . shall

be in writing, and signed by the party to be charged." Tenn. Code Ann. § 29-2-101 (2003). Regarding the "party to be charged," "[o]ur statute . . . has been construed by this court to mean the owner of the realty rather than the party attempted to be charged or held liable in an action based on the memorandum." *Lusky v. Keiser*, 164 S.W. 777, 778 (Tenn. 1913) (citation omitted); *see also Watson v. McCabe*, 527 F.2d 286, 288 (6th Cir 1975) (quoting *Irwin v. Dawson*, 273 S.W.2d 6, 7 (Tenn. 1955)) ("Tennessee courts have construed the statute in this manner for the reason that the statute 'was adopted and enacted in Tennessee for the protection of the people, who owned the title to real estate.'"); *Hillard v. Franklin*, 41 S.W.3d 106, 112 (Tenn. Ct. App. 2000); *Patterson v. Davis*, 192 S.W.2d 227, 229 (Tenn. Ct. App. 1945).

"Acceptance of an easement may be presumed if the conveyance is beneficial to the grantee, and there does not have to be an express unconditional acceptance of the easement to render it valid." 28A C.J.S. *Easements* § 56 (1996). We presume that Shelby County accepted the 1982 Easement in light of the fact that the 1995 Verizon Lease specifically mentions the 1982 Easement when, in turn, describing the easement granted to Verizon. This fact evidences an acquiescence by Shelby County to be bound by the 1982 Easement. Accordingly, the trial court erred by finding, as a matter of law, that the 1982 Easement violated the statute of frauds. Stonebridge, the party to be charged, signed the 1982 Easement,[8] and it did not have to be signed by Shelby County in order to have legal effect. *See Van Winkle v. City of LaVergne*, No. M2000-01784-COA-R3-CV, 2001 Tenn. App. LEXIS 717, at *15–17 (Tenn. Ct. App. Sept. 27, 2001).

At the moment the 1982 Easement took effect, the easement by necessity obtained by Shelby County, pursuant to the 1976 Deed, was abolished. An easement by necessity continues until the necessity giving rise to the easement no longer exists. *Morris v. Simmons*, 909 S.W.2d 441, 445 (Tenn. Ct. App. 1993). At the moment Shelby County obtained another lawful way to gain access to the Stonebridge Water Tower, the easement by necessity terminated. *See* 28A C.J.S. *Easements* § 120 (1996). Therefore, subsequent to 1982, Shelby County had an express easement across the Gravel Access Road which it could use to access the Stonebridge Water Tower.

Shelby County argues that the language in the 1982 Easement, which provides that Shelby County has an easement to use the Gravel Access Road "as a right-of-way easement for the maintenance and support of said water tank," operates to restrict its fee simple interest. In contrast, Shelby County points to the language in the 1976 Deed, which provides that Shelby County has a

---

[8] During oral argument, counsel for Highway 64 directed our attention to the fact that the 1982 Easement identifies the Shelby County Attorney's Office as the preparer of the document. The 1982 Easement provides:

This Instrument Prepared By:
Brittton Lamb
#777 160 N. Mid America Mall
Memphis, Tennessee 38103

Even assuming this were true, the record is devoid of any mention of this fact during the proceedings below. Accordingly, we decline to consider how this fact affected the validity of the 1982 Easement for the first time on appeal. *See City of Cookeville v. Humphrey*, 126 S.W.3d 897, 905–06 (Tenn. 2004); *Norton v. McCaskill*, 12 S.W.3d 789, 795 (Tenn. 2000).

"fee simple forever, as long as said premises is used as a water storage tank or for public utilities."
As with other instruments, "[i]n the construction of instruments creating easements, it is the duty of
the court to ascertain and give effect to the intention of the parties." 28A C.J.S. *Easements* § 57
(1996). Generally, "[w]here the language is unambiguous, other matters may not be considered, as
an easement specific in its terms is decisive of its limits." 28A C.J.S. *Easements* § 57 (1996); *see
also Foshee v. Brigman*, 129 S.W.2d 207, 208 (Tenn. 1939) ("If the easement is claimed under a
grant, the extent of the easement is determined by the language in the grant."). "In any event, where
the meaning of the instrument is doubtful, the rights of the parties are to be determined by the rule
of reason rather than by some technical rule of property law, and in such a case the court may
consider the surrounding circumstances at the time the instrument was executed, the situation of the
parties, and any practical construction of the instrument given by the parties themselves in
determining their intention." 28A C.J.S. *Easements* § 146 (1996).

While the grantor may choose to place restrictions on the use of the easement, "[t]he rules
and regulations so made may not limit the easement granted to the owner of the dominant estate nor
infringe on his property rights, but they may merely regulate the manner of the enjoyment of his
easement." 28A C.J.S. *Easements* § 159 (1996). When seeking to reconcile the 1982 Easement with
the 1976 Deed, it is necessary that we consider both instruments. *See* 28A C.J.S. *Easements* § 57
(1996). Under the 1976 Deed, Shelby County may utilize the property to erect a water storage tank
or for public utilities, which is much broader than the language used in the 1982 Easement.
Therefore, to the extent the 1982 Easement seeks to limit these two uses of the subject parcel, the
1982 Easement would have no effect. We think the better interpretation to be that Stonebridge did
not intend specifically to restrict the use of the easement, as argued by Highway 64, but merely to
solidify the purpose in granting such easement; to allow access to the parcel consistent with the 1976
Deed. To hold otherwise would prevent Shelby County from exercising its fee simple interest in the
subject property to the fullest extent permitted by the 1976 Deed.

### D.
### *Verizon's Use of the Easement*

Pursuant to the 1995 Verizon Lease, Shelby County purported to convey to Verizon an
easement over the Gravel Access Road to reach the Stonebridge Water Tower. The trial court found
that this was valid because, as an appurtenant easement, it was freely transferable. Relying on cases
from sister states, the trial court stated that "[t]he operative question in determining whether the use
of an easement by a third party is inconsistent with the purpose for which the easement was granted
is whether the third-party user is using the easement in a manner in which the easement owner itself
could use the easement. *See Henley v. Cont'l Cablevision of St. Louis County*, 692 S.W.2d 825, 828
(Mo. Ct. App. 1985); *Jollif v. Hardin Cable Television Co.*, 269 N.E.2d 588, 591 (Ohio 1971)." In
turn, the trial court ruled that Verizon's use of the Gravel Access Road did not increase the burden
on the servient estate held by Highway 64.

The trial court correctly concluded that Shelby County could provide Verizon an easement
over the Gravel Access Road, but the court reached this conclusion by applying an incorrect legal

standard. The precise issue of whether the dominant landowner may lease or provide use of a right of way to a third party under the circumstances involved in this case is a matter of first impression in this state. We begin our analysis by noting that "[t]he range of permissible uses of any particular easement is in the first instance defined by the circumstances surrounding the creation of that easement; its use is limited to the purposes for which it was created." 28A C.J.S. *Easements* § 159 (1996). Our case law adopts this general proposition, providing that:

> "The use of an easement must be confined strictly to the purposes for which it was granted or reserved. A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." 17 Am. Jur. 996, sec. 98.
>
> . . . .
>
> In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication." 9 R.C.L., 786, sec. 43; Jones on Easements, secs. 99 and 100.
>
> "A principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of it upon the servient estate, nor impose a new and additional burden thereon. . . . It may be said in general that if an easement is put to any use inconsistent with the purpose for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use." 9 R.C.L., 790, sec. 47; Jones on Easements, secs. 99 and 100.

*Adams v. Winnett*, 156 S.W.2d 353, 357 (Tenn. Ct. App. 1941); *see also McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991).

Finding no Tennessee cases directly on point, we turn to the decisions reached by our sister states when addressing similar issues.

> Pursuant to these courts, the determination of whether an easement holder can assign a portion of its rights to a third party depends on whether the easement is "exclusive" or "non-exclusive." The Missouri Court of Appeals explained "it is well settled that where the servient owner retains the privilege of sharing the benefit conferred by the easement, it is said to be 'common' or non-exclusive, and therefore not subject to apportionment by the easement owner.

-18-

Conversely, if the rights granted are exclusive of the servient owners' participation therein, divided utilization of the rights granted are presumptively allowable. This principle stems from the concept that one who grants to another the right to use the grantor's land in a particular manner for a specified purpose but who retains no interest in exercising a similar right himself, sustains no loss if, within the specifications expressed in the grant, the use is shared by the grantee with others. On the other hand, if the grantor intends to participate in the use or privilege granted, then his retained right may be diminished if the grantee shares his right with others."

*Zhang v. Omnipoint Communications Enters., Inc.*, No. CV010380095S, 2002 Conn. Super. LEXIS 3460, at \*11 (Conn. Super. Ct. Oct. 28, 2002) (citing *Henley v. Cont'l Cablevision of St. Louis County, Inc.*, 692 S.W.2d 825, 827–28 (Mo. Ct. App. 1985)). "An easement of grant is to be strictly construed, and it is generally held that the grant must be taken most strongly against the grantor, in cases of doubt, and in favor of the grantee[.]" 28A C.J.S. *Easements* § 57 (1996).

In the 1982 Easement, Stonebridge, the grantor, purports to grant "to Shelby County a perpetual easement over that portion of grantor's land which it is necessary to use as a right-of-way easement for the maintenance and repair of said water tank." Further, the grant of an easement provides: "TO HAVE AND TO HOLD all and singular the premises, together with the appurtenances, unto grantee and its successors forever." The term "exclusive" does not mean "confined to use by the grantee alone." *Am. Tel. and Tel. Co. of Mass. v. McDonald*, 173 N.E. 502, 502–03 (Mass. 1930). "Clearly guests, invitees *and tenants* are among those whose use of a road or way permitting access to a property would normally be, *in the absence of a specific restriction*, considered incidental to the ownership or use of the property." *Gowen v. Cote*, 875 S.W.2d 637, 641 (Mo. Ct. App. 1994) (emphasis added). The general rule regarding the permissible use of an easement can be stated as follows:

While a private way may not be used by the public generally or by any one having no better right than the general public, the owner of such a way is not limited to its use by himself, but it may be used by his family, by pets, *by tenants occupying the land with his authority*, by his servants, agents, or employees in conducting his business, by persons transacting business with him, or by guests for social purposes, except in cases where the right of way is created by express agreement *and the user is restricted by the terms of the agreement*.

28A C.J.S. Easements § 164 (1996) (emphasis added).

In construing the language of the 1982 Easement to determine whether it granted an exclusive easement to Shelby County, we are mindful that:

Tennessee recognizes the doctrine of *ejusdem generis*. Justice Burnett in an opinion on petition to rehear in *City of Knoxville v. Brown*, 195 Tenn. 501, 510, 260 S.W.2d 264, 268 (1953), states the following:

> The "doctrine of *Ejusdem Generis*" is not a rule of law but is merely an aid to the judicial mind in the interpretation of a statute or other writing. "The doctrine of *Ejusdem Generis* based on the maxim *expressio unius est exclusio alterius* is: that, where general words are used, followed by a designation of particular things or subject to be included or excluded as the case may be, the inclusion or exclusion will be presumed to be restricted to the particular thing or subject. . . . Literally translated, the phrase, *expressio unius est exclusio alterius*, means: the expression of one thing is the exclusion of another (of the same kind). Whilst the rule is more frequently applied to the construction of statutes and wills, it equally is applicable to other instruments of writing.

*Shipley v. Sofco Erectors, Inc*., Nos. 743 and 790, 1988 Tenn. App. LEXIS 311, at *17–18 (Tenn. Ct. App. May 16, 1988) (citations omitted); *see also Costa v. Clayton*, No. E2000-02627-COA-R3-CV, 2001 Tenn. App. LEXIS 453, at *4 (Tenn. Ct. App. June 22, 2001) (applying the doctrine to the interpretation of an easement). The Ohio Supreme Court, in deciding an issue factually similar to the one presently before this Court, stated:

> We therefore must study the deeds to see if the language used casts light on the question of the apportionability of the easements granted therein.
>
> In the deeds, the grantors conveyed to Ohio Power, "its successors and assigns forever, a right of way and easement with the right, privilege and authority to said party of the second party [Ohio Power], its successors, assigns, lessees, and tenants to construct, erect, operate and maintain a line of poles and wires for the purpose of transmitting electric or other power, including the telegraph or telephone wires."
>
> The crucial words of the grants which are determinative of the intention of the grantors are "successors, assigns, lessees, and tenants." (Emphasis added.) The words "lessees and tenants" indicate, particularly, that it was clearly intended by the parties to the grants that Ohio Power could lease some portion of its interest to third parties. Such language ("its lessees" obviously means "its sublessees," in the absence of any restrictive definition of "lessee" in the easements—and there is none) is open to no other interpretation.

*Jolliff v. Hardin Cable Television Co.*, 269 N.E.2d 588, 590 (Ohio 1971). In this case, we note the absence of specific language indicating the "servient owner retains the privilege of sharing the benefit conferred by the easement," thereby evidencing a lack of intent by Stonebridge to prevent Shelby County from apportioning its easement. *See Zhang*, 2002 Conn. Super. LEXIS 3460, at *11. Accordingly, we find Stonebridge did not intend for the 1982 Easement to be "non-exclusive," therefore, Shelby County, having obtained an exclusive easement, could properly provide Verizon an easement to the Stonebridge Water Tower over the Gravel Access Road.

The fact that the 1976 Deed provided that the property was to be used "as a water storage tank *or for public utilities*" does not change the result. We recognize that, "[w]hile the common law recognizes that certain easements may be assigned or apportioned to a third party, the third party's use cannot exceed the rights expressly conveyed to the original easement holder." *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). "In particular, the manner, frequency, and intensity of an easement's use may change over time to accomodate technological development[,] . . . [b]ut such changes must fall within the purposes for which the easement was created, as determined by the grant's terms." *Id*. at 701 (citation omitted); *see also* 28A C.J.S. *Easements* § 166 ("The owner of an exclusive easement is entitled to the free and undisturbed use of his property for the purposes of the easement, even as against the owner of the fee."). As stated above, Shelby County and MLGW may use the Gravel Access Road as an easement of way consistent with the purposes set forth in the 1976 Deed; "a water storage tank or for public utilities." Likewise, the Verizon Lease between Shelby County and Verizon could only convey those rights held by Shelby County under the 1982 Easement. *See Ogg v. Mediacom, L.L.C.*, 142 S.W.3d 801, 809 (Mo. Ct. App. 2004).

A "public utility" is defined as "[a] company that provides necessary services to the public, such as *telephones*, electricity, and water." Black's Law Dictionary 1544 (7th ed. 1999) (emphasis added). We find the services provided by Verizon to be within the meaning of "public utility" as that term is used in the 1976 Deed. In *Bishop v. City of Fayetteville*, 97 S.W.3d 913 (Ark. Ct. App. 2003), our sister state decided a case with facts similar to the case presently before this Court. In *Bishop*, the appellant's predecessor in title granted an easement to the city for two distinct purposes: "laying utilities on the easement and providing access to adjoining land the city owned." *Bishop*, 97 S.W.3d at 916. The city subsequently built a water tower on its property adjacent to the land owned by appellant's predecessor in interest. *Id*. In 1994, the city entered into an agreement with a cellular communications company, thereby permitting the company to attach wireless communications equipment to the city's water tower. *Id*. In addition, the city leased to the company its easement for ingress and egress over the servient tenement. *Id*. Following similar agreements executed by the city with other companies, the appellant sued for trespass, nuisance, and inverse condemnation, arguing that the city and the cellular communications companies had exceeded the scope and intent of the easement. *Id*. at 917.

In framing the arguments on appeal, the court stated:

Appellants contend that the right-of-way grant unambiguously limited its use to purposes relating to water utilities and did not permit its assignment for the purposes of constructing and servicing wireless-communications towers and equipment. In response, appellees argue that the judge correctly construed the grant as unambiguously conveying two different rights—a utility easement *and* an access driveway unrestricted in the purposes for which it can be used.

*Id*. at 918. In affirming the trial court's grant of summary judgment to the city, the appellate court stated:

On our review of the record, we do not believe that a reasonable person could construe the deed as limiting the rights conveyed to uses relating only to water utilities, and we therefore hold that the trial judge was correct in finding the grant to be unambiguous and in construing it as conveying an unrestricted access of right of way in addition to a utility easement.

Nor do we believe the trial judge erred in finding that the City's and its assign's use of the easement for access to the City's property was within the scope of the grant. The owner of an easement may make use of the easement compatible with the authorized use so long as the use is reasonable in light of all the facts and circumstances of the case. . . . [T]he telecommunications equipment was not placed on the easement, but on land belonging to the City.

*Id*. at 919. Accordingly, we affirm the trial court's ruling in all respects. As a result, we do not need to decide the alternative issue raised by Verizon on appeal.

**IV.**
**Conclusion**

For the reasons set forth herein, we affirm the ruling of the trial court in all respects. Costs of this appeal are taxed against the Appellant, Highway 64 Partners, L.L.P., and its surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE

-22-