# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 15, 2013 Session

## JAMES EBERLE ET AL. v. LISA PARROTT ELLIOTT, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JERRY WAYNE PARROTT, DECEASED

**Appeal from the Chancery Court for Monroe County**
**No. 16715      Jerri S. Bryant, Chancellor**

_____

**No. E2012-00298-COA-R3-CV - Filed June 28, 2013**

_____

This is a contested easement action regarding wooded mountain property in Monroe County. The Plaintiffs/Appellants, James and Edna Eberle, filed a complaint requesting that the Defendant/Appellee, Lisa Parrott Elliott, be enjoined from crossing the Eberles' property from her adjoining thirty-acre tract without benefit of an easement. Following a bench trial, the Monroe County Chancery Court dismissed the Eberles' complaint for injunctive relief and ruled that an easement exists for ingress and egress over the Eberles' property, appurtenant to and serving Ms. Elliott's property. The Eberles have appealed. At issue is whether the trial court erred by finding the existence of an easement, either express, prescriptive, or implied. The Eberles also assert that the trial court erred by failing to limit the easement to a use no greater than the use previously made over the servient property. Discerning no error, we affirm the trial court's ruling that an easement exists for ingress and egress and the court's dismissal of the complaint for injunctive relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

John W. Cleveland, Sr., Sweetwater, Tennessee, for the appellants, James and Edna Eberle.

John Carson, III, Madisonville, Tennessee, for the appellee, Lisa Parrott Elliott.

# OPINION

## I. Factual and Procedural Background

The Eberles purchased approximately twelve acres of real property ("Eberle Property"), comprised of four contiguous tracts of wooded land, in Monroe County in September 2006. Title to the Eberle Property was conveyed by two separate deeds, each transferring two tracts of land, the northern two tracts conveyed by Melvin and Sharon Moss and the southern two tracts by Glenn R. and Marilyn T. Breeding. The chains of title for all four tracts merge with the common predecessor in title, Sequoyah Land Company, Inc. ("Sequoyah"). The deed conveying the southern two tracts to the Eberles included a provision reserving a twenty-five-foot right-of-way to Sequoyah, and a provision that the land was conveyed "subject to all previous easements, visible or otherwise."

The Eberle Property is bounded on the northwest corner by a thirty-acre tract owned by Ms. Elliott ("Elliott Property"), which she inherited from her father, Jerry Wayne Parrott, upon his death in July 2009. Title to the thirty-acre tract was conveyed to Mr. Parrott by Donald and Helen Cochran in 1979. Mr. Parrott purchased other tracts contiguous to the thirty-acre tract at about the same time, with one of these parcels having direct egress to an asphalt county road. The chain of title for the Elliott Property and the other Parrott land originated with Sequoyah as the common predecessor in title. Sequoyah initially owned approximately 300 acres that included all of the property relevant to the present dispute.

The dirt road determined by the trial court to be an easement is labeled "Mountain Road" on survey maps and drawings admitted into evidence by both parties. Mountain Road begins at Shields Branch Road, an asphalt county road, and extends the length of the Eberle Property to the common boundary between the Eberle Property and the Elliott Property. Regarding the easement as established by the trial court, the Elliott Property is the dominant estate and the Eberle Property the servient estate.

At the trial, there was undisputed testimony from Mr. Eberle that he and Mr. Parrott were good friends and that Mr. Parrott had helped him choose the site on which to set the Eberles' mobile home. Mr. Parrott also assisted in building an addition to the Eberle home. Mr. Eberle identified photographs of a gate between the two properties, indicating that initially Mr. Parrott built the fence with Mr. Eberle, who later erected the gate. Both Mr. Eberle and Ms. Elliott testified that the gate had remained open as a matter of course while Mr. Parrott was alive. After Mr. Parrott's death in 2009, a dispute erupted between the parties over whether an easement existed. The Eberles began locking the gate in January 2010.

The Eberles filed a complaint on June 16, 2010, alleging that Ms. Elliott and her brother, Wayne Edward Parrott,[1] were crossing the Eberle Property without having been granted an easement by deed or otherwise. Upon the Eberles' request, the trial court granted a temporary restraining order against Ms. Elliott and her brother, enjoining them from "going onto, over or across" the Eberle Property.

Following a bench trial held on November 9, 2010, the trial court concluded that there existed an easement across the Eberle Property for ingress and egress. The court also dismissed the Eberles' complaint and dissolved the temporary restraining order against Ms. Elliott and her brother. Attendant to these rulings, the court permanently enjoined the Eberles from interfering with Ms. Elliott's use of the right of way.

In finding the existence of an easement, the trial court stated, *inter alia*, in its Final Judgment:

> It is the decree of this Court that there is an easement for ingress and egress over the lands conveyed to James Eberle and wife, Edna Eberle by instruments of record in WD 315, p. 684 and WD 316, p. 189 (generally shown on 2010 Tax Assessment Map [174] as Parcel 55.00), appurtenant to and serving the lands conveyed to Lisa Yelene Parrott Elliott by instruments of record in WD 339, p. [614] and Will Book GG, page 653 (generally shown on 2010 Tax Assessment Map 174 as Parcel 56), across the road generally shown on the plats of record in Plat Book 7, p. 104 and Plat Cabinet H, Slide 29, all in the office of the Register of Deeds for Monroe County, Tennessee.

The Eberles moved to alter or amend the judgment on June 30, 2011, arguing that no easement existed. The Eberles requested that the court limit the easement to benefit the unimproved dominant estate to a use no greater than Ms. Elliott claimed she and her family had made of the servient estate in the past; that the court establish the width of the easement; and that the court limit the easement to run with the land, but only for use by Ms. Elliott and her successor(s) in title. They specifically requested that if the court affirmed its award of the easement, they be allowed to erect and maintain a gate at the Eberle-Elliott common boundary with a lock to which both parties would possess keys. The Eberles also asked that

---

[1]Ms. Elliott argued in her answer to the complaint that her brother, Wayne Edward Parrott, was not properly a party to this action. He remained in the style of the case until the parties filed a joint motion to realign the parties on appeal, which was granted by this Court in an Order entered July 31, 2012. For ease of reference, we shall refer to Ms. Elliott's father, Jerry Wayne Parrott, as "Mr. Parrott" and Wayne Edward Parrott as "Ms. Elliott's brother."

the permanent injunction against interference with use of the easement be dismissed as to Ms. Elliott's brother because he did not own any land that adjoined the Eberles' land.

After a hearing on October 4, 2011, the trial court entered an Order Amending Final Decree and Amended Final Decree on January 6, 2012, in which the court affirmed the dismissal of the Eberles' claim, the dissolution of the temporary restraining order, and the permanent restraining order enjoining any interference by the Eberles in Ms. Elliott's use of the right of way. Regarding injunctive relief granted against the Eberles, the court amended its previous use of the plural "Counter-Plaintiffs" for Ms. Elliott and her brother to the singular "Counter-Plaintiff," presumably in response to the Eberles' request to remove Ms. Elliott's brother from the injunction. The court also amended the paragraph granting an easement to read:

> It is the decree of this Court that there is an easement for ingress and egress over the land conveyed to James Eberle and wife, Edna Eberle by instruments of record in WD 315, p. 684 and WD 316, p. 189 (generally shown on 2010 Tax Assessment Map 174 as Parcel 55.00), appurtenant to and serving the land conveyed to Lisa Yelene Parrott Elliott by instruments of record in WD 339, p. 614 and Will Book GG, page 653 (generally shown on 2010 Tax Assessment Map 174 as Parcel 56), **all in the office of the Register of Deeds for Monroe County, Tennessee,** across the **existing** road **at its general width and location extending to, but not beyond, the boundary line between the parties for such use as has been made of said road and land, but to create no greater burden on the servient estate than has been made heretofore.**

(Emphasis supplied to reflect the trial court's amendments to Final Judgment.)

Ms. Elliott filed a "Motion to Alter or Amend Judgment or in the Alternative for Specific Statement of Finding of Fact" on February 2, 2012, in which she requested specific findings of fact as to " (1) the 'current width and location' of the decreed right of way; and (2) 'use as has been made of said road and land'; and/or (3) the burden upon the servient estate." The Eberles filed a response to this motion on April 5, 2012, by which they argued that the specific findings requested by Ms. Elliott did not need to be addressed by the trial court.

Ms. Elliott subsequently filed a petition for contempt on March 19, 2012, in which she alleged that the Eberles had "blocked the roadbed with vehicles, placed trash and debris in said roadway, and placed fence in the same." The Eberles filed a response to the petition for contempt on April 5, 2012, in which they denied the allegations.

Following a hearing on April 12, 2012, the trial court entered a Second Amended Final Judgment on May 31, 2012, in which it made the following findings of fact:

(1)     The easement is for ingress and egress; and

(2)     The easement is as described in the deeds of Mr. Eberle and is neither enlarged nor is it reduced in physical size and/or limitation of use based on past use by the parent tract.

The trial court affirmed its previous ruling and amended the description of the easement to eliminate the substantive revisions made in the First Amended Final Judgment:

It is the decree of this Court that there is an easement for ingress and egress over the lands conveyed to James Eberle and wife, Edna Eberle by instruments of record in WD 315, p. 684 and WD 316, p. 189 (generally shown on 2010 Tax Assessment Map 174 as Parcel 55.00), appurtenant to and serving the lands conveyed to Lisa Yelene Parrott Elliott by instruments of record in WD 339, p. 614 and Will Book GG, page 653 (generally shown on 2010 Tax Assessment Map 174 as Parcel 56), across the road generally shown on the plats of record in Plat Book 7, p. 104 and Plat Cabinet H, Slide 29, all in the office of the Register of Deeds for Monroe County, Tennessee.

The Eberles timely appealed.

## II. Issues Presented

On appeal, the parties present the following issues for review, which we have restated as follows:

1.     Whether the trial court erred in finding an express grant of an easement for Ms. Elliott to cross the Eberle Property.

2.     Whether the trial court erred in dismissing the Eberles' complaint for injunctive relief because Ms. Elliott failed to prove by clear and convincing evidence that she has a prescriptive easement across the Eberle Property.

3.     Whether the trial court erred in finding an easement by implication.

4.     Whether the trial court erred in declaring that Ms. Elliott is entitled to an easement greater than the prior use made of the servient estate.

## III. Standard of Review

In this non-jury easement dispute, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Shew v. Bawgus*, 227 S.W.3d 569, 576 (Tenn. Ct. App. 2007) (citing *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). "In order for the evidence to preponderate against the trial court's finding of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Shew*, 227 S.W.3d at 576 (citing *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)).

## IV. No Express Grant of Easement

The parties differ in their interpretation of the legal basis for the trial court's ruling that Ms. Elliott enjoys an easement for ingress and egress across the Eberle Property. The Eberles contend that it is unclear whether the trial court found an easement by express grant. The Eberles specifically argue that neither Ms. Elliot nor her predecessors in title were expressly granted an easement across the Eberle Property.

In her brief on appeal, Ms. Elliott acknowledges that the trial court did not establish the easement by express grant. We agree that the court's judgment is unclear as to the basis for its establishment of an easement in favor of Ms. Elliott.

"'An easement is a right an owner has to some lawful use of the real property of another.'" *Cellco P'ship v. Shelby County*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005) (quoting *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996)) (internal citation omitted). Tennessee courts recognize several different types of easements:

> Easements can be created in several ways in Tennessee, including: (1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain. Easements can be divided into two broad classes, easements appurtenant, and easements in gross. In an easement appurtenant, there are 2 tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement. Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel. An easement appurtenant to land is favored over an easement in gross in Tennessee.

-6-

*Cellco*, 172 S.W.3d at 588 (quoting *Pevear*, 924 S.W.2d at 115-16) (internal citations omitted).

An express grant of an easement is a right conveyed by deed. *See, e.g.*, *Mitchell v. Chance*, 149 S.W.3d 40, 47 (Tenn. Ct. App. 2004); *Shew*, 227 S.W.3d at 576. An express grant must comply with the requirements of the statute of frauds, as codified in Tennessee Code Annotated § 29-2-101 (Supp. 2012). *See Cellco*, 172 S.W.3d at 593. "To create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license." *Smith v. Evans*, No. M2007-02855-COA-R3-CV, 2008 WL 398117 at *2 (Tenn. Ct. App. Aug. 27, 2008) (quoting 25 Am.Jur.2d *Easements and Licenses* § 15 (2008) (internal citation omitted)); *see also* T.C.A. 29-2-101. Our Supreme Court has noted that "[i]n construing a deed, our primary task is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances." *Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005).

The chains of title for both parties merge with the common predecessor in title, Sequoyah. The two tracts that comprise the sourthern portion of the Eberles' property were conveyed to the Eberles by Glenn R. and Marilyn T. Breeden on September 25, 2006. In relevant part, the property descriptions for these tracts are as follows:

**TRACT 1:**

**BEGINNING** at a point in the center of the road, corner with Donald G. Ritchey; thence running from said point in the center of the road the following calls and distances: North 89 degrees 40' East 76.87 feet; North 75 degrees 02' East 63.46 feet; North 56 degrees 07' East 39.70 feet; North 41 degrees 56' East 48.26 feet and North 55 degrees 06' East 80.97 feet to a point in the center of the road; thence running from said point North 67 degrees 11' West 1136.95 feet to a point; thence running from said point South 32 degrees 05' East 542.66 feet to a point, corner with Donald G. Ritchey; thence running from said point North 76 degrees 07' East 506.77 feet to a point; thence running from said point South 2 degrees 08' West 231.46 feet to a point in the center of the road and being the point of beginning. Said **property containing 4 acres, more or less.**

**TRACT II:**

**BEGINNING** at an iron pin, being the common corner of James Richie and Sequoyah Land Company, Incorporated; thence running from said iron pin North 76 degrees 07' East and with the line of James Richie 506.77 feet to a point; thence running from said point South 2 degrees 08' West 231.46 feet to a point in the center of the road; thence running with the center of the road the following calls and distances; North 87 degrees 52' West 91.64 feet; North 73 degrees 18' West 65.12 feet; South 86 degrees 09' West 30.80 feet; South 60 degrees 07' West 133.79 feet; South 75 degrees 34' West 59.57 feet and South 64 degrees 52' West 40.41 feet to a point in the center of the road; thence running from said point North 25 degrees 08' West 208 feet to an iron pin in the James Richie line and being the point of beginning. Said **property containing 2 acres more or less.**

Sequoyah Land Company, Incorporated reserves a 25 foot right-of-way for road purposes along the Southern portion or [sic] the property and for egress and ingress purposes.

Said property is **SUBJECT** to all right-of-ways and easements that may exist on the property either visible or otherwise.

(Emphasis in original.)

Title to Ms. Elliott's thirty-acre tract passed to her through Mr. Parrott's last will and testament upon his death in 1992. Mr. Parrott acquired title to the property by deed dated September 14, 1989, from William Donald Ledford and Wilby Jean Ledford. The relevant portion of the property description for this tract provides:

BEGINNING at an iron pin corner near the County Road; thence running from said iron pin corner, South 24° 39' East 1151.22 feet to an iron pin corner with the Sequoyah Land Company, Inc., property; thence running from said iron pin, North 60° 50' West, 1057 feet to an iron pin corner; thence running from said iron pin, N. 11° 55' East 1102.53 feet to an iron pin; thence running from said iron pin, South 65° 01' East and crossing the County Road, 1503.44 feet to an iron pin and being the point of BEGINNING, containing thirty (30) acres, more or less and sold by the boundary and not by the acreage as acreage is to guaranteed.

. . .

[S]aid premises are free from all encumbrances, with no exceptions, other than all visible easements and rights of way, and those specifically set out hereinabove. . . .

In its Memorandum Opinion, announced from the bench at the trial and incorporated into the Final Judgment, the trial court noted, in pertinent part:

Mr. Eberle's deeds have the words in them that say, a right of way for road purposes, which he doesn't want a road there. And the Elliott deed doesn't say anything, and she wants one. So I think that they each are trying to argue against what their specific deeds say in them, which makes it an interesting case.

. . .

The Elliott deed description begins at an iron pin corner near the county road, and it's agreed, I think between the parties that the county is not maintaining the road on the land of either of these parties. I think even though [Sequoyah President] Sloan testified he thought that meant the county road is Mountain Road, there's just [no] way that that's even possible. The county road, I think, at that description had to have talked about that road or the part of land that connected to Pine Road. There's just no way [the county road] could've been Mountain Road.

The Eberle chain–all their deeds say beginning at a point in the center of the road. So obviously, Sequoyah Land thought that there was more than one road running into this piece of property. And it's not the law that you can only have or that you're only entitled to one in and out on your piece of property. You can have more than one.

The Eberle chain also has another paragraph that talks about subject to any and all prior easements or right of ways, including the right of way running with the center of the road. I think one of them said visible or all visible rights of way. Sequoyah was the latest predecessor in title of all the property, and conveyed it to Elliott without a reservation of an easement. So we're not talking about a reservation to Elliott specifically.

Although, the deeds called for a corner near the county road–I went through that–that's not the corner of Mountain Road. Eberle deed at Warranty Book 316 Page 189–which Eberle, I think, received [. . . ] in 2000 has a right

of way for road purposes along the southern portion of the property for ingress and egress purposes. It doesn't say to whom this right of way is given, but it does say the right of way is there for road purposes for ingress and egress, and that road reaches all the way to the 30-acre tract.

In 2006 is when Eberle obtained title to the southern portion of that road. That deed says, subject to prior easements. At the time that he owned the northern part of the road or the pink line, it went all the way back to the 30-acre tract, and that certainly didn't change anything by the acquisition of the sourthern parts of the property that he obtained.

Sequoyah sold their 30-acre tract subject to all visible easements. There is no easement by reservation to Elliott. Sequoyah—and there is no proof of this, and it's no speculation on the Court's part. Can't speculate as to whether Sequoyah thought that they were giving anything on the southern part of the Eberle tract to anyone, but it wouldn't make any sense [. . . ] for that to go all the way back to the 30-acre tract without it to benefit the 30-acre tract. There's no limiting language on the language of the easement along the southern boundary for ingress and egress and road purposes.

The Court finds it benefits, not only the southern parts of the Eberle property, but also benefits the 30-acre tract. The Court dissolves the restraining order in this case. It would've—then it also benefitted, since Moss had the property—I believe it was Moss that had the southern part of that tract—that ingress and egress also benefitted them. So I'm finding that that pink line in Exhibit 17 [Mountain Road] is there for the benefit of not only the—both sides of the road for Eberle, but also the 30-acre tract.

We conclude that the trial court found an express reservation of at least one easement, the twenty-five-foot right-of-way, as well as the express grant of "all visible easements" in the Eberle chain of title, which the parties do not dispute and which is supported by clear and convincing evidence in the deeds and the maps admitted into evidence showing the twenty-five-foot easement as Mountain Road. We do not conclude, however, that the trial court found an express grant of an easement in favor of Ms. Elliott, as supported by the absence of an express grant in Ms. Elliott's deed. Instead, the court ruled that Mountain Road, reserved as an easement in the Eberles' chain of title, also benefitted the Elliott Property. Our analysis therefore must focus on whether the trial court established the easement by reason of prescription, or, as asserted by Ms. Elliott, by implication.

## V. No Easement by Prescription

"A prescriptive easement is an implied easement that is premised on the use of the property rather than language in a deed." *Shew*, 227 S.W.3d at 578-79 (quoting *Stinson v. Bobo*, No. M2001-02704-COA-R3-CV, 2003 WL 238723 at *3 (Tenn. Ct. App. Feb. 4, 2003)). To establish a prescriptive easement, the complainant must prove by clear and convincing evidence that her use of the property is made under an adverse claim of right and is "continuous, uninterrupted, open, visible, and exclusive" for "at [least] twenty years with the owner's knowledge and acquiescence." *Id.*; *see also Stone v. Brickey*, 70 S.W.3d 82, 86 (Tenn. Ct. App. 2001).

The trial court made no specific findings of fact in its Memorandum Opinion regarding whether Ms. Elliott's or Mr. Parrott's use of Mountain Road was continuous, uninterrupted, open, visible, and exclusive or whether it had occurred for at least twenty years with Mr. Eberle's and his predecessors' knowledge and acquiescence. The Eberles argue that Ms. Elliott failed to prove by clear and convincing evidence that her use of the property was made under an adverse claim of right for the applicable period. Our review of the trial court's findings and the record in this case leads us to agree with the Eberles that the trial court did not award the easement by reason of prescription.

## VI. Easement by Implication

The Eberles contend in their initial brief on appeal that if Ms. Elliott does not have an easement by express grant or one by prescription, the trial court should not have dismissed the Eberles' claim for injunctive relief against Ms. Elliott. This assertion discounts the existence of an easement by implication and shall therefore be addressed with our analysis of whether the trial court properly established an implied easement.

Tennessee courts have long held that to find the existence of an easement by implication, the following elements must be present:

> (1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been long established and obvious or manifest as to show that it was meant to be permanent; and (3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained.

*Cellco*, 172 S.W.3d at 589 (quoting *Johnson v. Headrick*, 34 Tenn. App. 294, 237 S.W.2d 567, 570 (1948)). A fourth element of continuous servitude was indicated in *Cellco* as "sometimes added" but has been found since by this Court to be "subsumed within the other

three long-established elements." *See Ingram v. Wasson*, 379 S.W.3d 227, 242 n.17 (Tenn. Ct. App. 2011) (citing *Cellco*, 172 S.W.3d at 589). The burden of proof for establishing an implied easement is by a preponderance of the evidence, rather than the burden of clear and convincing evidence needed to establish a prescriptive easement. *See Haun v. Haun*, E2004-01895-COA-R3-CV, 2005 WL 990566 at *4 (Tenn. Ct. App. Apr. 28, 2005) (citing *Allison v. Allison*, 193 S.W.2d 476 (Tenn. Ct. App. 1945)) (additional internal citations omitted).

This Court recently distinguished between two types of easement by implication: easement implied by prior use and easement created by necessity:

> [T]here is considerable overlap between an easement implied from prior use and an easement created by necessity. Both are implied, both arise from a conveyance, both hinge on a finding of necessity. Hence, the confusion. To distinguish between them, an easement created by necessity "does not depend on a prior use" and the fact that any prior use "is permissive is irrelevant to the question [of] whether [an] easement [created by] necessity will be deemed to exist." 25 Am.Jur.2d *Easements and Licenses* § 32. Moreover, an easement created by necessity "need not be in existence at the time of the conveyance" and may allow for a route of access where one previously did not exist. *Id.*; *see Cellco*, 172 S.W.3d at 591.

*Ingram*, 379 S.W.3d at 240 (footnote omitted).

In this case, the trial court stressed in its Memorandum Opinion that both parties' chains of title originated with Sequoyah as the common predecessor; that the right-of-way reserved by Sequoyah in the Eberle chain of title was, in the language of the deed, "for road purposes for ingress and egress"; and that the road extended "all the way back to the 30-acre tract," which the court found made no sense on Sequoyah's part unless the road was meant to benefit the thirty-acre tract. The court's focus on the language reserving a right-of-way and other visible easements in the deed from Sequoyah to the Eberles' predecessor-in-title indicates that the court found an easement implied from prior use rather than one created by necessity.

### A. Separation of Title

The record shows and the parties have stipulated that the first element needed for an implied easement is satisfied. The chains of title for both parties' property merge with the common predecessor in title, Sequoyah. The titles were separated when Sequoyah sold the Elliott Property to Donald and Helen Cochran on January 5, 1979. Both sets of tracts, two tracts each, that now comprise the Eberle Property were sold by Sequoyah in 1984.

## B. Prior Use

To satisfy the second element, the trial court had to determine that before Sequoyah sold the Elliott Property in 1979, the use of what is now Mountain Road across the Eberle Property was "long established and obvious or manifest as to show that it was meant to be permanent." *See Cellco*, 172 S.W.3d at 589. In their reply brief, the Eberles argue that what is now Mountain Road had been "a farm road, a footpath and a logging road" but that such temporary use made by a common owner(s) did not constitute a use meant to be permanent once the titles were separated. Ms. Elliott contends that Mountain Road had been used to access what is now the Elliott Property for as long as anyone could remember, was still in use at the time of separation, and was intended for use after separation.

During the trial, two witnesses testified regarding the use made of the property prior to the separation of title. Sequoyah's President, Jerry Sloan, identified a drawing, dated November 14, 1978, which was created by the surveyor who surveyed all of the property involved in this case about the time it was acquired by Sequoyah from Ernest West. He indicated that the property had been logged recently when Sequoyah purchased title and that he believed Mr. West was in the logging business. He related that Mountain Road was a "log road" and was not maintained by the county when Sequoyah purchased the property. According to Mr. Sloan, Mountain Road adjoined Bullet Creek Road at that time and continued to an asphalt road near Maple Springs Church.

Mr. Sloan also testified that when Sequoyah purchased the property, the county began to maintain what he described as the road that "goes out to the asphalt road, comes in, and dead-ends back here." When asked to clarify, he said it was the "pink line on Exhibit 17," which has been identified by the parties as Mountain Road on the exhibits. Mr. Sloan indicated that when Sequoyah bought the property, Mountain Road was "graded and graveled." He recalled that when Sequoyah sold the property, he and other developers made "mistakes" and "[e]verything we deeded was deeded to the center of the road with an easement to that road." He agreed that the Elliott Property did not border any county-maintained road other than Mountain Road when Sequoyah sold it.

Mr. Sloan also testified that when Sequoyah purchased the thirty-acre tract, now the Elliott Property, from Mr. West, it did not purchase any access north and east out of the property. He said that no road into the thirty-acre tract was maintained from the northeast while Sequoyah owned the property and that Mountain Road was the only access to that thirty acres when Sequoyah sold it.

During his continuing testimony, Mr. Sloan indicated that Sequoyah acquired title from Mr. West in the late 1970s. He identified the deed by which Sequoyah conveyed the

Elliott Property to the Cochrans and confirmed his signature on the deed. He agreed he would not have sold the thirty-acre tract without any means to get onto or out of the property. He agreed his company did not by deed grant an easement of egress or ingress to the thirty-acre tract when the company sold the tract, explaining, "[I]f it's not in the deed, I didn't."

On redirect examination, Mr. Sloan identified the deed by which Sequoyah conveyed title to the two southernmost tracts that now comprise the Eberle Property to Clyde and Carolyn Freeman. He noted that the road shown on Mr. Freeman's deed followed the property line and was the same Mountain Road as that marked in pink on exhibit 17. He agreed that on Sequoyah's 1978 survey drawing, the dotted line coming into the property from the southeast represented Mountain Road.

Mr. Sloan further testified that when Sequoyah bought the 300 acres, there was a sawmill site but no longer any sawmill. He said there were two roads, one to the north that dead-ended and was used when loggers picked up logs, and a second to the southwest, now called Mountain Road. He explained that Mountain Road was the road into the sawmill site. On recross examination, Mr. Sloan agreed that the recording dates of the respective deeds from Sequoyah evinced that Sequoyah sold the Elliott Property before it sold the Eberle Property.

The second witness testifying to prior use before the separation of title was Ray Evans, who testified that he was born in 1941 and had been raised in the area. He said that when he was a child, the Elliott Property was called "Shields Fields" because it was owned by the Shields family. According to Mr. Evans, his parents lived in the gap depicted at the top of the property map, and he attended Bullet Creek School on Bullet Creek Road. He said that to travel from his house down to the school in the late 1940s and early 1950s, he and others would come "down a ways up the holler up on the top of that 30 acres there and down what's called Mountain Road now." Mr. Evans related that Mountain Road was a farm road and did not have a name when he walked it.

Mr. Evans also testified that after the Shields family no longer owned the Elliott Property, he knew the Wests, who came to own it. As he explained, the Wests cut timber off the Elliott Property and had two sawmills on it, one on the northern end and one in the "big holler" on the lower side. When the Wests needed to move the cut logs off the upper side, they hauled them with horses on what is now called Pine Grove Road. He said that no one ever objected to the children using Mountain Road to walk to school and that there was only one house on the property at the time. Mr. Evans indicated that he did not remember Mountain Road being blocked in his lifetime.

-14-

Mr. Evans further explained that the Shields family owned all of the property from what is now the thirty-acre Elliott Property to Shields Branch Road when he was growing up. His father owned the property on which they lived, and there was one road that went down to Pine Grove Road, but it was not a county road at that time. He said that before he went to the turnaround a few weeks before the trial with Ms. Elliott, he had not been on the property for about thirty years.

This testimony established that Mountain Road had been used, as the Eberles concede, as a footpath and logging road prior to the separation of title in 1979. Mr. Evans remembered crossing the property on Mountain Road in the late 1940s when the Shields family owned the land, and he recalled the Wests later using Mountain Road to transport logs and lumber prior to their selling the property to Sequoyah. Although Mr. Sloan expressed some confusion over whether Mountain Road was maintained by the county before Sequoyah sold the Elliott Property, he was adamant that Mountain Road was used to access the Elliott Property, and he implied when he admitted "mistakes were made" that Sequoyah's intent was for such access to continue. The testimony from these witnesses supports the trial court's finding that Mountain Road had been used to access the Elliott Property for several years before the separation of title. *See, e.g.*, *Ingram*, 379 S.W.3d at 242 (affirming trial court's finding that the prior use element was established by testimony to such use in affidavits); *Smith v. Hankins*, No. E2010-00733-COA-R3-CV, 2011 WL 3847148 at *8 (Tenn. Ct. App. Aug. 30, 2011) (affirming trial court's finding that the prior use element was established by testimony that a roadway had been used by tractors and ATVs for approximately twenty years).

## C. Reasonable Necessity

To satisfy the third element, the trial court was required to find necessity in that the easement is essential to Ms. Elliott's beneficial enjoyment of her thirty-acre tract. The Eberles argue that Ms. Elliott failed to show that the use of Mountain Road across the Eberle Property is necessary because she already has access to her property via a county road and because she failed to show that the expense of creating an alternate passage from the county road to the section of Mountain Road on her property would be unreasonable. Ms. Elliott posits that the terrain of the parties' property is such that the Elliott Property should not be limited to one means of ingress and egress. We agree with Ms. Elliott and also conclude that proof of comparable expense was not required to support the trial court's finding.

At the trial, Mr. Eberle testified that Mr. Parrott had often visited the Eberles and would frequently traverse the "back way" on his four-wheeler. He explained that the only time Mr. Parrott drove any vehicle larger than a four-wheeler onto the Eberle Property via Mountain Road was when he took a backhoe through the area. He said Mr. Parrott accessed

-15-

his own house from Reliance Road, which was a paved state road, and never used the Eberle Property to access his home unless returning from a visit on his four-wheeler. Mr. Eberle related that no one had crossed his property during the time he owned it to go to and from the Parrotts' property.

According to Mr. Eberle, he had been a guest in Mr. Parrott's home several times. Although Mr. Parrott maintained a sawmill on his property, Mr. Eberle never saw logs hauled out of the sawmill down Mountain Road. Mr. Eberle bought oak lumber from Mr. Parrott's sawmill and brought the lumber to his house via Reliance Road to Maple Springs Road to Shields Branch Road to Mountain Road. He said he saw Mr. Parrott take his four-wheeler and backhoe out Pine Grove Road many times. Mr. Eberle opined that from the end of Mountain Road at the Eberle home to the thirty-acre Elliott Property, the way is passable but that it is "pretty tough to do with [the Eberles'] house sitting there." According to Mr. Eberle, he had scratched his truck several times trying to go around the house on that path. He said that when he viewed the sawmill site, he accessed Mr. Parrott's land via Reliance Road. He did admit that the surveyors used Mountain Road to access the Elliott Property.

Mr. Eberle agreed that when he bought his property, Sequoyah reserved a twenty-five-foot right-of-way along the southern portion for ingress and egress purposes and that the southern portion is along "Mountain Road." He said that to his knowledge, Sequoyah owned no other tracts past his property at the time he purchased it.

Mr. Eberle also testified that the deed identified was for two tracts to the north of the road. He agreed his deed provides "to the center of the road" and that the property to the center of the road is subject to a right-of-way for the property to the south of the road. He said he had been up Pine Grove Road and had accessed the thirty-acre Elliott Property from Pine Grove Road, which was a gravel road that any car or truck could travel.

Ms. Elliott testified that no one had ever lived on her thirty-acre tract and that Mr. Parrott began logging the property as soon as he bought it in 1989. Mr. Parrott used logs from what is now the Elliott Property to build his own home, build her brother's home, and help Mr. Eberle build his porch. She remembered seeing Mr. Parrott take the logs from the thirty-acre tract to his sawmill, which structure was located on the same tract as the Parrott home. She said Mr. Parrott transported the logs "out Mountain Road to Shields Branch to Maple Springs to Reliance and then into the front of his property to the sawmill." She opined there was no way to transport the logs straight up the mountain and across the Parrott land because the terrain was so steep that logs would fall off a truck.

Ms. Elliott also testified that the fifteen-acre tract behind the improved ten-acre tract belonged to her brother, who inherited it from Mr. Parrott. She agreed that initially Mr.

Parrott owned both the ten-acre and fifteen-acre tracts and that the assessment map shows a road or private drive going from Reliance Road past the house and into the sawmill area. She said this road dead-ends at her brother's house and that her brother's tract joins the thirty-acre tract at one corner. She said that at one time, Mr. Parrott simultaneously owned the ten-acre, fifteen-acre, and thirty-acre tracts. She agreed that when Mr. Parrott conveyed the fifteen-acre tract to his son, there existed a tract of land he did not own between his ten-acre and thirty-acre tracts.

According to Ms. Elliott, there had never been a house built on the Elliott Property, and the Parrott home, built by her father, was on a separate ten-acre tract with a driveway leading to county-maintained Reliance Road. She said the tract improved with the Parrott home does not adjoin the thirty-acre Elliott Property and that it is only possible to access the Elliott Property from the Parrott home by four-wheeler or other all-terrain vehicle. Two roads lead to the Elliott Property, Pine Grove Road and Mountain Road, and neither is maintained by the county to the point where it accesses the Elliott Property. She identified the portion of Pine Grove Road maintained by the county, explaining that the road surface becomes progressively worse, transitioning from gravel to dirt, and that no part of the gravel road touches the Elliott Property at any point.

Ms. Elliott testified that she can travel from Pine Grove Road to her property by crossing into the driveway of another neighbor, Mrs. Pickelsimer, traversing the culvert in the Pickelsimer yard, and turning by the fence. She indicated there are three ways to access the thirty-acre Elliott Property: (1) through Mrs. Pickelsimer's yard, (2) through Mr. Eberle's yard, or (3) via the four-wheeler trail behind her brother's house that crosses a creek. She related that the Eberles' home is on a ridge at the "top of the mountain" and that the section by Mrs. Pickelsimer's yard off Pine Grove Road is the lowest part of the Elliott Property. She explained that from the top of the property to the bottom, there are steep cliffs and sharp drop-offs, such that it is impossible to drive a straight route from top to bottom.

In its Memorandum Opinion, the trial court surmised from the description in the Eberle Property chain of title that Sequoyah intended more than one road "running into" the property and that Mountain Road was one of these. The court ultimately concluded that Mountain Road was meant to benefit the Elliott Property as well as the two tracts of the Eberle Property, despite the undisputed fact that Ms. Elliott had another access to the southern portion of her property from Pine Grove Road.

As this Court has explained regarding the demonstration of necessity, "Tennessee law interprets the concept of 'necessity' as being 'reasonably necessary' for the enjoyment of the dominant tenement, as opposed to strict or absolute necessity." *Haun*, 2005 WL 990566 at *6 (citing *Rightsell v. Hale*, 18 S.W. 245, 246 (Tenn. 1891)); *The Pointe, LLC v. Lake Mgmt.*

*Ass'n, Inc.*, 50 S.W.3d 471, 478 (Tenn. Ct. App. 2000); *Johnson*, 237 S.W.2d at 570; *Allison*, 193 S.W.2d at 477-78.  The prevailing rule is that:

> Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude is in use at the time of severance and is necessary for the reasonable enjoyment of the other part, on a severance of the ownership the grant of the right to continue such use arises by implication of law.

*Haun*, 2005 WL 990566 at *5-6 (quoting *Lively v. Noe*, 460 S.W.2d 852, 854-55 (Tenn. Ct. App. 1970)).

We conclude that the evidence does not preponderate against the trial court's finding that it was reasonably necessary for Ms. Elliott to access her property via Mountain Road across the Eberle Property.  We also conclude that such a finding was not precluded by Ms. Elliott's failure to show a cost analysis for creating access to Mountain Road across her own property. *See*, *e.g.*, *Ingram*, 379 S.W.3d at 242 (affirming the trial court's refusal to find that an alternate mode of access advocated by the servient estate owners relieved the necessity of the dominant estate to benefit from an implied easement); *Rhoades v. Taylor*, No. M2001-00643-COA-R3-CV, 2003 WL 724672 at *5 (Tenn. Ct. App. Mar. 4, 2003) (noting that it was not necessary for the defendants to build another driveway to access their land from a public road where the evidence showed sufficient use of the plaintiffs' property to find an implied easement).

The Eberles posit that a fourth element of an easement by implication, that of continuous use, was not shown by a preponderance of the evidence.  As stated above, this Court has recently noted that in Tennessee, continuous use generally has been subsumed into the three long-standing elements. *See Ingram*, 379 S.W.3d at 242 n.17 (citing *Cellco*, 172 S.W.3d at 589); *but see Barrett v. Hill*, No.01A01-9806-CV-00295, 1999 WL 802642 at *3 (Tenn. Ct. App. Oct. 7, 1999) (listing continuous use as a fourth element essential to create an easement by implication).  With our conclusion that the prior use element is satisfied, supported by testimony at trial that Mountain Road was used to access the Elliott Property to some extent since before the separation of title and throughout Mr. Parrott's life, we conclude that the Eberles' argument based on lack of continuous use cannot prevail.

After an exhaustive review of the record, we hold that the evidence supports a determination that the easement identified in the Eberle chain of title exists by implication to benefit the Elliott Property.  We further hold, therefore, that the trial court properly dismissed the Eberles' claim for injunctive relief.

## VII. Limited Use of Easement

The Eberles next contend that the trial court erred by not limiting the extent of the easement for ingress and egress granted to Ms. Elliott to the parameters of its past use by Ms. Elliott and her family. They argue that if this Court affirms the grant of an easement to Ms. Elliott, the case should be remanded to the trial court for an amended judgment limiting the ingress and egress to the purposes of "recreational use of horses or four-wheelers, to gather firewood and stovewood and for harvesting timber" and limiting the location of the easement to only that which now exists, without any interference with the Eberles' use and enjoyment of the property and without any destruction to the Eberles' property. Ms. Elliott contends that the trial court's ruling did not enlarge the existing easement and that no limiting amendment is needed. We agree with Ms. Elliott.

In support of their argument, the Eberles accurately cite the following general proposition as adopted by Tennessee case law:

> The use of an easement must be confined strictly to the purposes for which it was granted or reserved. A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden.

*Cellco*, 172 S.W.3d at 595-96 (quoting *Adams v. Winnett*, 156 S.W.2d 353, 357 (1941)). The Eberles also rely on the holding in *Shew*, in which this Court reversed the trial court's grant of a prescriptive easement for a thirty-foot driveway when the easement had been used for approximately fifty years as a much narrower driveway. *See* 227 S.W.3d at 579-80. In contrast, there exists no evidence in the record in this case to indicate that the trial court expanded the implied easement beyond the prior use made by the parties and their predecessors-in-title. The Eberles' reliance on *Shew* is misplaced.

The trial court, after a hearing on the Eberles' motion to alter or amend the judgment, entered an Order Amending Final Decree and Amended Final Decree, in which it amended the description of the easement from "across the road generally shown on the plats of record in Plat Book 7, p. 104 and Plat Cabinet H, Slide 29 . . . ." to "across the existing road at its general width and location extending to, but not beyond, the boundary line between the parties for such use as has been made of said road and land, but to create no greater burden on the servient estate than has been made heretofore." Ms. Elliott filed a motion requesting specific findings of fact regarding the width of the road, prior use of the road, and the burden on the servient estate, to which the Eberles responded. After a subsequent hearing, the trial court entered a Second Amended Final Judgment, reverting back to the language in the original Final Judgment and making the following findings of fact:

(1)     The easement is for ingress and egress; and

(2)     The easement is as described in the deeds of Mr. Eberle and is neither enlarged nor is it reduced in physical size and/or limitation of use based on past use by the parent tract.

In the above findings of fact, the trial court clarified that the easement originated with the Eberles' chain of title, and as noted in the court's Memorandum Opinion, included the twenty-five-foot right-of-way reserved by Sequoyah and any easements, "visible or otherwise," that existed on the property at the time of conveyance. The evidence does not preponderate against the trial court's finding that Mountain Road is an easement intended for the benefit of the Elliott Property as well as the Eberle Property on each side of the easement. This finding constitutes an easement by implication that benefits both the dominant and servient estate. As such, neither landowner is entitled to interfere with the other's reasonable use of the easement for ingress and egress or to enlarge or decrease the existing easement. *See Rogers v. Roach*, No. M2011-00794-COA-R3-CV, 2012 WL 2337616 at *8-10 (Tenn. Ct. App. June 19, 2012) ("[T]he rights of the easement owner and of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both the easement and the servient estate.") (quoting *Carroll v. Belcher*, No. 01A01-9802-CH-00106, 1999 WL 58597 at *1 (Tenn. Ct. App. Feb. 9, 1999) (quoting 10 Tennessee Jurisprudence, Easements § 6 (1994))). For this reason, we conclude that the easement is sufficiently limited as a matter of law and that the trial court did not err by declining to limit the easement further. The Eberles are not entitled to relief on this issue.

VIII.  Conclusion

For the reasons stated above, the judgment of the trial court finding an easement for ingress and egress over the Eberle Property, appurtenant to and serving the Elliott Property, is affirmed, as is the trial court's dismissal of the Eberles' complaint for injunctive relief against Ms. Elliott. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE