IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 18, 2025 Session

## HARPETH CREST HOA v. CYPRESSBROOK COLEY DAVIS, GENERAL PARTNERSHIP

**Appeal from the Chancery Court for Davidson County**
**No. 23-0454-IV      Russell T. Perkins, Chancellor**

_____

**No. M2024-00732-COA-R3-CV**

_____

This case involves a disputed easement. Appellant filed a complaint for declaratory judgment asking the trial court to conclude that Appellee did not possess an easement over Appellant's property. On cross motions for summary judgment, the trial court concluded that: (1) Appellee had an express easement appurtenant over Appellant's property; and (2) an increase in traffic due to the normal development of Appellee's property did not overburden the easement. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Jason D. Holleman, Nashville, Tennessee, for the appellant, Harpeth Crest Homeowner's Association.

Peter C. Sales and Benjamin A. Johnson, Nashville, Tennessee, for the appellee, Cypressbrook Coley Davis, General Partnership.

## OPINION

### I. Background

Appellee Cypressbrook Coley Davis, General Partnership ("Cypressbrook") owns property located at 1084 Morton Mill Road, Nashville, Tennessee ("Cypressbrook Property"). The Cypressbrook Property is comprised of 40-acres of mostly undeveloped land with a single-family home and a horse stable situated on it. Appellant Harpeth Crest Homeowner's Association ("HOA") owns 1087 Morton Mill Road ("Disputed Property"),

a common area within the HOA, which is adjacent to the southern boundary of the Cypressbrook's Property. The two properties are separated by railroad tracks. A gravel road begins at the Disputed Property, travels over the railroad tracks, and onto the Cypressbrook Property. Currently, the gravel road is the only means of ingress/egress onto the Cypressbrook Property. Cypressbrook intends to create a planned development on the property, which would include: (1) a high-density apartment complex; (2) a bridge at the northern point of the property that crosses the Harpeth River and connects to Coley Davis Road; and (3) an extension of the Harpeth River Greenway. Metropolitan Government of Nashville and Davidson County ("Metro") have rezoned the Cypressbrook Property to allow for this development. The current dispute arises from Cypressbrook's intention to use the gravel road to transport construction equipment to build the bridge.

On April 11, 2023, the HOA filed a declaratory judgment action in the Davidson County Chancery Court ("trial court"). The HOA initially filed suit against its predecessor in title, Harpeth Crest, LLC ("Harpeth Developer"), and Cypressbrook's predecessor in title, the Estate of James E. Fussell ("Fussell Estate"). Relevant here, the HOA requested, *inter alia*, that the trial court determine that no easement existed across the Disputed Property, *i.e.,* the gravel road, for the benefit of the Fussell/Cypressbrook Property.

On May 3, 2023, the Fussell Estate filed an answer, denying that the HOA was entitled to the relief it sought and alleging several affirmative/additional defenses. The Fussell Estate also alleged counterclaims, including: (1) slander of title; (2) declaratory judgment for a prescriptive easement; (3) declaratory judgment for an easement by implication; and (4) declaratory judgment for a private easement or right of way under Tennessee Code Annotated section 54-14-102.

On November 28, 2023, the HOA voluntarily dismissed its claims against the Harpeth Developer. On February 9, 2024, the trial court entered an agreed order substituting Cypressbrook for the Fussell Estate.

On March 20, 2024, Cypressbrook filed a motion for summary judgment arguing, *inter alia*, that: (1) Cypressbrook, as the dominant estate, had an express ingress/egress easement over the HOA's property, *i.e.,* the Disputed Property, as recorded in a previous deed and plat, discussed *infra*; (2) the planned use of the easement was consistent with the normal development of the property and was approved by Metro; and (3) the easement was created to provide unrestricted access for any traffic to and from the Cypressbrook Property, including construction traffic necessary to develop the property.

The following day, the HOA filed a motion for summary judgment arguing that Cypressbrook had no claim for: (1) slander of title; (2) an express easement; (3) a prescriptive easement; (4) an easement by implication; and (5) a private easement or right of way. The HOA also argued that, even if Cypressbrook had an easement, its anticipated new use overburdened the HOA's property and should be prohibited. The parties filed

responses to the respective motions.

On April 25, 2024, the trial court heard the competing motions for summary judgment. By order of May 1, 2024, the trial court granted Cypressbrook's motion, concluding that: (1) Cypressbrook has an express easement appurtenant, *i.e.,* the gravel road, for ingress/egress purposes over the HOA's Disputed Property; and (2) an increase in traffic due to the normal development of the Cypressbrook Property does not constitute an unreasonable increase in the burden on the easement. The trial court granted the HOA's motion on Cypressbrook's slander of title claim but otherwise denied the motion. The HOA filed a timely notice of appeal.

## II. Issue

Although the HOA raises four issues for review, the dispositive issue is whether the trial court erred in granting Cypressbrook's motion for summary judgment.

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Green v. Green***, 293 S.W.3d 493, 514 (Tenn. 2009). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Furthermore,

> "[w]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co.,*** [***Ltd. v. Zenith Radio Corp***.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 235, 265 (Tenn. 2015).

# IV. Analysis

The resolution of the appellate issue requires an initial determination of whether Cypressbrook has an easement across the Disputed Property. If an easement exists, the next question is whether Cypressbrook's anticipated use of that easement overburdens the Disputed Property.

## A. Existence of Easement

"An easement is an interest in property that confers on its holder a legally enforceable right to use another's property for a specific purpose." *Holder v. Serodino*, No. M2014-00533-COA-R3-CV, 2015 WL 5458377, at *7 (Tenn. Ct. App. Sept. 16, 2015) (quoting *Hall v. Pippin*, 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998)). Easements can be created in several ways, including: (1) express grant; (2) reservation; (3) implication; (4) prescription; (5) estoppel; and (6) eminent domain. *Pevear v. Hunt*, 924 S.W.2d 114, 116 (Tenn. Ct. App. 1996). Here, the trial court concluded that Cypressbrook possesses an express easement. This Court has explained that

> "[t]o create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license." 25 Am. Jur. 2d *Easements and Licenses* § 15 (2008); *Adcock v. Witcher*, [No. 01-A-01-9505-CH00220], 1995 WL 675852 at *2 (Tenn. Ct. App. Nov. 15, 1995). "The scope of such an easement is set forth in express terms, either in the granting documents or as matter of incorporation and legal construction of terms of relevant documents. . . ." 25 Am. Jur. 2d *Easements and Licenses* § 15. An easement reserved in a recorded plat is sufficient to constitute an express easement. *Moore v. Queener*, 464 S.W.2d 296, 302 (Tenn. Ct. App. 1970); *see also Jacoway v. Palmer*, 753 S.W.2d 675 (Tenn. Ct. App. 1987); *Smith v. Black*, 547 S.W.2d 947 (Tenn. Ct. App. 1976).

*Smith v. Evans*, No. M2007-02855-COA-R3-CV, 2008 WL 3983117, at *2 (Tenn. Ct. App. Aug. 27, 2008). While easements may be created in several ways, they are divided into two broad categories: (1) easements appurtenant; and (2) easements in gross. *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005). Here, the trial court found that the express easement is appurtenant. With such easement, "there are 2 tracts of land, the dominant tenement, and the servient tenement[, and] [t]he dominant tenement benefits in some way from the use of the servient tenement." *Id.* Furthermore, "'[e]asements appurtenant run with the land and may be enforced by subsequent purchasers of the dominant tenement against owners of the servient tenement.'" *Holder*, 2015 WL

5458377, at \*8 (quoting *Newman v. Woodard*, 288 S.W.3d 862, 865 (Tenn. Ct. App. 2008) (citing *Cellco P'ship*, 172 S.W.3d at 588)).[1]

Because the trial court held that there is an express easement appurtenant, a review of the conveyances of the Cypressbrook Property and the Disputed Property is helpful to our review. In 1982, Helen Petty McKaig and Peggy Petty Little conveyed the Cypressbrook Property to James E. Fussell. At the time, W.J. Newsom owned 991 Morton Mill Road ("Harpeth Crest"), which consisted of several acres of land that would later be developed into the HOA's subdivision, discussed *infra*. Mr. Fussell accessed his property via a gravel road that crossed the Harpeth Crest property.

In July 1999, Mr. Newsom conveyed Harpeth Crest to Max and Barbara Vinson. Mr. Fussell's access to the gravel road was recorded in an easement ("Gravel Easement") contained in the Vinsons' warranty deed ("Vinson Deed"). The Vinson Deed was made an exhibit to Cypressbrook's motion for summary judgment. The Gravel Easement provided that the Vinsons took the property

> ***[s]ubject to an existing gravel driveway for ingress and egress for adjacent parcels as shown on the survey*** dated June 18, 1999, revised July 12, 1999 identified as Job No. 99-043 prepared by Daniels & Associates, Inc. Gregory E. Daniels, License Surveyor No. 1489.

(Emphasis added). The above-referenced survey ("Survey") was also made an exhibit to Cypressbrook's motion for summary judgment. The relevant portion of the Survey is enlarged below:

---

[1] By contrast, an easement in gross is "simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel." *Pevear*, 924 S.W.2d at 116.



As seen above, the following note appears on the Survey: "Existing gravel drive serves as the only access to parcel 103 and parcel 17 **to the north of this tract across railroad as shown hereon**." (Emphasis added).

In 2001, the Vinsons conveyed Harpeth Crest to the Harpeth Developer. Portions of the deposition of the Harpeth Developer's owner, Robert Bolden, were attached as an exhibit to Cypressbrook's motion for summary judgment. Relevant here, Mr. Bolden testified that his site plan for the subdivision placed houses along a portion of the Gravel Easement. Mr. Bolden testified that, to preserve Mr. Fussell's access to the Cypressbrook Property, he and Mr. Fussell agreed to relocate the Gravel Easement ("Second Gravel Easement"). The Second Gravel Easement was recorded on the Harpeth Crest Subdivision Plat ("Plat"), which was also made an exhibit to Cypressbrook's motion for summary judgment. The relevant portion of the Plat is enlarged below:



As shown above, and as corroborated by Mr. Bolden's testimony, the Second Gravel Easement was recorded as a "50' Ingress/Egress Access Easement." The Second Gravel Easement begins in the cul-de-sac, *i.e.,* the Disputed Property, crosses the railroad tracks, and continues into the Cypressbrook Property.

In August 2023, the Harpeth Developer quitclaimed the Disputed Property to the HOA ("HOA Deed"). The HOA Deed, which was an exhibit to Cypressbrook's motion for summary judgment, provides that it is subject to:

1. Encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey or inspection of the premises.

2. Any and all other conditions, limitations, reservations, easements, and other matters of record[.]

In November 2023, the Fussell Estate conveyed the Cypressbrook Property to Cypressbrook.

Having reviewed the foregoing conveyances, we affirm the trial court's conclusion that the Cypressbrook Property has an express easement appurtenant across the Disputed Property. Specifically, the Vinson Deed provided that the Vinsons took Harpeth Crest "[s]ubject to an existing gravel driveway for ingress and egress" onto Mr. Fussell's property, *i.e.,* the Cypressbrook Property. The language in the Vinson Deed clearly demonstrates Mr. Newsom's intent to create an express easement appurtenant, *i.e.,* the Gravel Easement, in favor of Mr. Fussell's, *i.e.,* Cypressbrook's, property. **Smith**, 2008

WL 3983117, at *2 (internal citations omitted). As shown in the Survey, which was referenced in the Vinson Deed, the Gravel Easement begins in Harpeth Crest, crosses the railroad tracks, and continues into Mr. Fussell's property, *i.e.,* the Cypressbrook Property. Because Mr. Fussell's/Cypressbrook's Property benefitted from the easement, it was the dominant tenement, and Harpeth Crest/the Disputed Property was the servient tenement. ***Cellco P'ship***, 172 S.W.3d at 588. When the Vinsons conveyed Harpeth Crest to the Harpeth Developer, Mr. Bolden created the Second Gravel Easement, *i.e.,* a "fifty-foot ingress/egress access easement," to replace the Gravel Easement; the Second Gravel Easement was recorded on the Plat, pictured *supra*. As discussed above, "[a]n easement reserved in a recorded plat is sufficient to constitute an express easement." ***Smith***, 2008 WL 3983117, at *2 (internal citations omitted). Accordingly, the Second Gravel Easement was also an express easement appurtenant. As clearly depicted on the Plat, like the easement depicted in the Survey, the Second Gravel Easement begins in the cul-de-sac of Harpeth Crest/the Disputed Property, continues across the railroad tracks, and into the adjacent property, *i.e.,* the Fussell/Cypressbrook Property. Again, as the property benefitting from the easement, the Fussell/Cypressbrook Property is the dominant tenement, and Harpeth Crest/the Disputed Property is the servient tenement. ***Id.*** As easements appurtenant, the Gravel Easement and the Second Gravel Easement run with the land. ***Holder***, 2015 WL 5458377, at *8 (quoting ***Newman***, 288 S.W.3d at 865 (citing ***Cellco P'ship***, 172 S.W.3d at 588)). When the HOA obtained title to the Disputed Property in August 2023, it did so subject to "[a]ny and all other conditions, limitations, reservations, easements . . . ." "[I]t is well settled that the 'grantee of a servient tenement takes the property subject to all duly recorded prior easements whether such easements are mentioned in the grantee's deed or not . . . ." ***Riegel v. Wilkerson***, No. W2013-01391-COA-R3-CV, 2014 WL 546113, at *6 (Tenn. Ct. App. Feb. 11, 2014) (quoting 28A C.J.S. *Easements* § 134) (citing Tenn. Code Ann. § 66-26-102 (stating that recorded instruments are "notice to all the world from the time they are noted for registration."); ***Goetz v. Knoxville, Power & Light***, 290, S.W. 409 (Tenn. 1926); ***Jones v. Ross***, 388 S.W.2d 640 (Tenn. Ct. App. 1963)). Accordingly, when the HOA took possession of the Disputed Property in 2023, it did so subject to the previously recorded Gravel Easement and Second Gravel Easement (together, "Easement"). Accordingly, we affirm the trial court's conclusion that Cypressbrook has an express easement appurtenant for ingress/egress over the HOA's Disputed Property.

## B. Overburdening

Having determined that an express easement appurtenant exists for the benefit of the Cypressbrook Property, we turn to the question of whether Cypressbrook's anticipated use of the Easement overburdens the Disputed Property. This Court has explained that "'the easement holder's use of the easement must be confined to the purpose stated in the grant of the easement.'" ***Riegel***, 2014 WL 546113, at *5 (quoting ***Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n***, No. M2005-01193-COA-R3-CV, 2006 WL 2449909, at *3 (Tenn. Ct. App. Aug. 21, 2006)). As discussed above,

Cypressbrook's Easement simply states that it is a fifty foot "ingress/egress access easement." In short, its purpose is to provide ingress and egress to the Cypressbrook Property.

The parties addressed the overburdening argument in their competing motions for summary judgment. In its motion, the HOA focused on Cypressbrook's intended *development plan*—rather than Cypressbrook's intended *use of the Easement*—when arguing that Cypressbrook's anticipated use would overburden the Disputed Property. Specifically, the HOA argued that

> [Cypressbrook intends to convert the property in question from an approximately 1,250 square foot single family dwelling and private horse stable . . . to seven (7) multi-story apartment buildings totaling almost five hundred thousand square feet (500,000 sf).

> Under Tennessee jurisprudence, [Cypressbrook's] intended use of [the HOA's] property is far beyond any use undertaken or contemplated by [Cypressbrook's] predecessors in interest, and as such, this Court should find, as a matter of law, that this proposed use would overburden any easement or right of way on [the HOA's] property.

A similar argument was rejected by this Court in ***Regen v. E. Fork Farms, LP***, No. M2008-01414-COA-R3-CV, 2009 WL 3672788 *1 (Tenn. Ct. App. Nov. 4, 2009). In ***Regen***, the owners of a servient estate argued that changing the dominant estate's use from residential/agricultural to a horse boarding and training facility would unreasonably increase the burden on the easement. *Id.* at *1. Like the Easement at issue here, the easement in ***Regen*** stated that it was for the purpose of ingress and egress to the dominant estate. *Id.* at *2. It also contained "no restrictions on what types of vehicles may use the easement, no limitations as to the number of vehicles that may use the easement during any given time, and no conditions on the use of the property for which the ingress and egress is provided." *Id.* The ***Regen*** Court concluded that "the easement contains no limitations on the use of the [dominant estate]," and, "[i]n the absence of such a restriction, it can hardly be claimed that the change of use of the property affects the easement in any way." *Id.* at *3. Similarly, here, the Easement broadly provides for ingress and egress, but it contains no restrictions on the type or the number of vehicles that may use the Easement. Furthermore, the Easement contains no conditions concerning the development, zoning, or use of the Cypressbrook Property.

Additionally, the ***Regen*** Court observed that, "it is not so much the change in the use of the dominant estate that matters, but rather the burden that change places upon the easement and the servient estate." *Id.* Notably, in its motion for summary judgment, the HOA failed to present any *evidence* concerning Cypressbrook's anticipated use of *the Easement*. As the movant, the HOA had the burden of showing that there were no genuine

issues as to material facts. Tenn. R. Civ. P. 56.04. As part of its motion, the HOA was required to set forth a separate and concise statement of material facts supported by specific citations to the record. Tenn. R. Civ. P. 56.03. The HOA could meet its burden by pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Tenn. R. Civ. P. 56.04. From our review of the HOA's motion and statement of material facts, it failed to present any facts and/or evidence to show Cypressbrook's anticipated use of *the Easement*. In short, the HOA failed to support its motion for summary judgment as Rule 56.04 of the Tennessee Rules of Civil Procedure requires. *Rye*, 477 S.W.3d at 265; Tenn. R. Civ. P. 56.04. Accordingly, the trial court did not err in denying the HOA's motion for summary judgment on its overburdening argument.[2]

In its motion for summary judgment, Cypressbrook relied on **Regen** to argue that its anticipated use of the Easement would not overburden it. As an initial matter, Cypressbrook argued that, like the easement in **Regen**, the Easement here contained no restrictions on the type or amount of traffic it would support. As discussed above, the record supports this assertion. In support of its motion for summary judgment, Cypressbrook provided evidence concerning the amount and type of traffic that regularly traveled the Easement before Cypressbrook purchased the property. This evidence was in the form of the declaration and deposition testimony of Nancy Hilgert and Dana Ayers, tenants who leased the property from Mr. Fussell from 1989 through 2005 and from 2010 through 2023, respectively. In her declaration, Ms. Ayers stated:

> 7. Over the course of the Lease Term my personal and familial use varied over the years. When my children were living with me, we would have from four to eight cars of non-commercial use a day that would utilize the Gravel

---

[2] For completeness, we briefly address the HOA's reliance on two cases as support for its motion for summary judgment, response to Cypressbrook's motion for summary judgment, and appellate brief. First, the HOA relies on **Knight v. Utz**, 673 S.W.2d 161 (Tenn. App. 1984) for the proposition that this Court "has specifically held that increasing the residential units with access to a driveway in the development of a dominant tract did overburden the servient estate." **Knight** is distinguishable from the instant case insofar as it concerned: (1) the use of a joint driveway that was not created by a deed in either property's chain of title; (2) one party's installation of a metal fence down the center of the driveway; and (3) whether the other party abandoned/forfeited their right to use the easement. **Id.** at 162-64. Accordingly, **Knight** is not dispositive here.

Second, the HOA argues that **Burchfiel v. Gatlinburg Airport Auth.**, No. E2005-02023-COA-R3-CV, 2006 WL 3421282 (Tenn. Ct. App. Nov. 28, 2006) is analogous to the case at bar. We disagree. **Burchfiel** concerned the construction of a sign on an easement. This Court held, in part, that

> [t]he purpose of the easement is clear. It was created to provide the Airport Authority with a means of ingress and egress to and from the property it had acquired by condemnation. The sign at issue is not a logical extension or promotion of this purpose. The sign is large and, according to Airport Manager, Don Baker, "advertises" the Museum. We hold that the deed does not implicitly authorize the construction of this sign.

**Burchfiel**, 2006 WL 3421282, at *5. As such, **Burchfiel** is also unpersuasive.

- 10 -

Road to access the Fussell Property and the house. The number varied depending on how many of my children were home and how many of their friends were visiting. On multiple occasions I allowed my children to have parties to celebrate various life events. The number of non-commercial cars on these occasions varied from ten to fifty.

8. In addition to my personal and familial use, I also ran a commercial horse farm on the Fussell Property.

9. My horse farm had boarding, horse riding lessons, and general riding.

10. During the Lease Term, approximately five to seven vehicles per day would use the Gravel Road to access my commercial horse farm. Approximately, half of the daily commercial vehicle traffic included horse trailers.

11. During the Lease Term, I also held riding lessons and clinics. Each of the lessons and clinics had between four and nine students. Typically, each student would arrive in a separate car. While the lessons and clinics were being held, the weekly commercial car use of the Gravel Road would increase by ten to twenty cars a week.

Ms. Ayers testified that, "[a]t the height of running [her] business," "probably four to five" vehicles traveled the Easement daily. Likewise, in her deposition, Ms. Hilgert testified that she also used the Easement for personal and commercial purposes during her tenancy.

In addition to Ms. Ayers' and Ms. Hilgert's testimony, Cypressbrook provided evidence demonstrating its anticipated use of the Easement. This evidence included Metro's amendments to the zoning ordinance. The amendments placed certain conditions on Cypressbrook's use of the Easement to minimize disturbances to the HOA's members. The conditions included, *inter alia*, that: (1) construction traffic over the Disputed Property would cease when the bridge from Coley Davis Road to the Cypressbrook Property was completed; (2) construction vehicles were permitted over the Disputed Property between 7:30 a.m. and 6:30 p.m., Monday through Saturday only; (3) construction traffic was not to exceed an average of five vehicles per day over any three-week period; (4) construction vehicles were prohibited from parking on Morton Mill Road at any time; and (5) if a construction vehicle stopped to offload equipment, it was prohibited from blocking a residence's driveway. Based on the foregoing evidence, Cypressbrook argued that "[t]he construction traffic is temporary, and the burden on the [] Easement will greatly diminish after a new primary access point," *i.e.,* the bridge to Coley Davis Road, is constructed.

In its response to Cypressbrook's motion for summary judgment, the HOA alleged that "the level of traffic that will utilize the [] Easement for seven (7) multi-story apartment

buildings is likely to be significantly greater than the existing burden." Notably, the HOA failed to present *any* evidence to show that residential traffic in and out of the Cypressbrook Property would traverse the Easement. Rather, it rested "upon the mere allegations" in its pleading. *Rye*, 477 S.W.3d at 265; Tenn. R. Civ. P. 56.06. Furthermore, the HOA included Cypressbrook's development plan as an exhibit to its motion for summary judgment, and this plan showed that the Easement ultimately would be gated and used for emergency access only. Thus, on review of the evidence from both parties, it appears that the Easement will be used solely to bring in equipment and materials to construct the bridge to Coley Davis Road. When the bridge is completed, the Easement will be gated and used for emergency access only.

In *Regen*, this Court explained that "[g]enerally, an *increase in traffic* over an easement in the process of normal development of the dominant estate, in and of itself, does not overburden a servient estate." *Regen*, 2009 WL 3672788, at *3 (emphasis in original) (internal citations omitted). "The increase in traffic is merely an increase in the degree of the burden, not an additional burden." *Id.* From our review, it does not appear that there will be an increase in traffic on the Easement. According to Ms. Ayers' declaration and testimony, an average of five vehicles (if not more), including horse trailers, used the Easement every day during her thirteen-year tenancy. As provided in Metro's conditions for the development of the Cypressbrook Property, an average of five vehicles are allowed to use the Easement each day. Thus, it appears that the anticipated number of vehicles that will use the Easement during Cypressbrook's construction will be less than the number of vehicles that used the Easement when Ms. Ayers leased the property.

However, assuming, *arguendo*, that there would be an increase in traffic over the Easement, as discussed above, if the traffic is the result of "the process of normal development of the dominant estate," this traffic alone would not overburden the Disputed Property or the Easement. *Id.* In litigating Cypressbrook's motion for summary judgment, the parties disputed the term "normal development." Cypressbrook again relied on *Regen* to support its argument that its anticipated use of the Easement would not overburden the Disputed Property or the Easement. In *Regen*, we explained that

> the holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude.

*Regen*, 2009 WL 3672788, at *3 (quoting Restatement (Third) of Prop., Servitudes § 4.10). At issue in *Regen* was whether a horse farm constituted "normal development of the dominant estate." *Id.* at *3. This Court discussed that the dominant estate was zoned as an agricultural district, with "the right to use the property in a variety of ways, including

single family residential, mobile home, park, and agricultural activity." *Id.* at *3. We also discussed how, prior to purchasing the dominant estate, the owner applied for a commercial exception to build the horse farm, which the Metropolitan Board of Zoning Appeals issued subject to certain conditions. *Id.* at *1, 3. We concluded that, "as a matter of law, Metro consider[ed] a facility such as the one proposed for the [dominant] property to be appropriate, normal development for the area." *Id.*

Relying on the foregoing, Cypressbrook argued that Metro approved the rezoning of its property to allow for multi-family residential housing. As such, Metro considered Cypressbrook's development plan to be appropriate, normal development for the area. Accordingly, Cypressbrook's anticipated use of the Disputed Property and the Easement would be consistent with the normal development of its property. Cypressbrook also argued that the grantor of the Easement, *i.e.,* the Harpeth Developer, specifically intended that the Easement would be used to facilitate the development of the Cypressbrook Property. As support for this argument, Cypressbrook included portions of Mr. Bolden's deposition testimony as an exhibit to the motion for summary judgment. Relevant here, Mr. Bolden testified that, at the time the Easement was created, it was his intent to: (1) purchase the Cypressbrook Property and develop it; (2) use the Easement to facilitate the development of the property; and (3) eventually extend Morton Mill Road from the cul-de-sac, over the railroad tracks, and onto the Fussell/Cypressbrook Property. As such, he testified that he did not intend there to be any restrictions on the use of the Easement.

In its response, the HOA attempted to distinguish **Regen** from the case, *sub judice*. Citing a footnote from **Regen**, the HOA argued that "the degree and abruptness of the change of use of the dominant estate may indicate that the new use of the dominant estate is not normal development." **Regen**, 2009 WL 3672788, at *3 n.8 (citing Restatement (Third) of Prop., Servitudes § 4.10, cmt. f.). Based on the foregoing, the HOA alleged that Cypressbrook's proposed use of the property "is dramatic in the degree and abruptness of the change in use from single family residence to a four (4) story 400+ unit apartment complex," and that "without a dramatic rezoning . . . and significant amendment to the applicable community growth plan . . ., Cypressbrook would not be permitted . . . to construct a large-scale apartment complex on the property in question in the normal development process." In short, the HOA seems to argue that, because Cypressbrook's development plan would not have been permitted by the zoning regulations on the Cypressbrook Property when the Easement was created, the proposed development cannot be deemed "normal development" as contemplated by the Court in **Regen**. As an initial matter, because the statements from the cited footnote were not necessary to the determination of the issue in **Regen**, they are dicta, and, while such comments may be persuasive, they are not binding precedent. *See **Staten v. State***, 232 S.W.2d 18, 19 (Tenn. 1950). Nevertheless, we briefly turn to review Restatement Third of Property, Servitudes, section 4.10, comment f, which is the authority cited by the **Regen** Court in the footnote.

Comment f provides several considerations to aid in determining whether a change

to the dominant estate is part of "normal development." These include: (1) "[t]he manner in which the servitude was created . . . to the extent it shapes the inferences that may reasonably be drawn as to the intent or expectations of the parties;" and (2) "the degree and abruptness of transition" from one type of use of property to another. Restatement (Third) of Prop., Servitudes § 4.10, cmt. f. By way of example, the comment provides: "In one case, a roadway easement could continue to be used by the dominant estate through all phases of its development, while, in the other, it could not be used to serve the subdivision." Restatement (Third) of Prop., Servitudes § 4.10, cmt. f. Comment f refers to comment h "for further discussion of development that creates an unreasonable interference with use of the servient estate." Restatement (Third) of Prop., Servitudes § 4.10, cmt. f. Comment h provides that, "where the parties have not agreed otherwise . . . the easement holder may not use it in such a way as to interfere unreasonably with enjoyment of the servient estate." Restatement (Third) of Prop., Servitudes § 4.10, cmt. h. Unreasonable interferences "will depend largely on the circumstances, particularly the purpose for which the servitude was created and the use of the servient estate made or reasonably contemplated at the time the easement was created." Restatement (Third) of Prop., Servitudes § 4.10, cmt. h. The commentaries in comment h are in accord with our case law, which provides that, "[w]here [an] easement is not specifically defined, it need be only such as is reasonably necessary and convenient for the purpose for which it was created." *Shew v. Bawgus*, 227 S.W.3d 569, 577 (Tenn. Ct. App. 2007). It is the duty of our courts, when interpreting the instruments that create easements, "'to ascertain and give effect to the intention of the parties.'" *Cellco P'ship*, 172 S.W.3d at 594 (quoting 28A C.J.S. *Easements* § 57 (1996)). Where the meaning of the instrument is in doubt, "the court may consider the surrounding circumstances at the time the instrument was executed, the situation of the parties, and any practical construction of the instrument given by the parties themselves in determining their intention." *Cellco P'ship*, 172 S.W.3d at 595 (quoting 28A C.J.S. *Easements* § 146 (1996)). In response to Cypressbrook's motion for summary judgment, the HOA, despite Mr. Bolden's testimony, alleged that it was "inarguable" that the purpose of the Easement was for ingress/egress to a "rural single-family residence" rather than for ingress/egress by: (1) "heavy construction equipment" to facilitate the development of a "seven (7) multistory apartment building;" and (2) emergency vehicles that would service "hundreds of residential units." Again, the HOA provided no evidence to support this allegation or to dispute the evidence Cypressbrook provided, *i.e.,* Mr. Bolden's deposition testimony. Rather, it rested "upon the mere allegations" in its pleadings. *Rye*, 477 S.W.3d at 265; Tenn. R. Civ. P. 56.06.

The parties make similar arguments to this Court. On our review, the summary judgment evidence demonstrates that Cypressbrook's anticipated use of the Easement will not overburden the Easement nor the HOA's Disputed Property. As discussed above, the Easement contains no restrictions on the type or the number of vehicles that may use the Easement and places no conditions on the Cypressbrook Property. Furthermore, Cypressbrook presented evidence showing that the anticipated traffic over the Easement would be similar to, if not less than, the traffic that previously traveled the Easement. The

HOA presented no evidence to dispute this. Nevertheless, assuming, *arguendo*, that there is an increase in traffic, Cypressbrook has shown, and the HOA has presented no evidence to dispute, that the change is consistent with "normal development" of the Cypressbrook Property. When the Harpeth Developer purchased Harpeth Crest from the Vinsons, Harpeth Crest consisted of several acres of undeveloped land, which later became the subdivision governed by the HOA. It is clear from Mr. Bolden's testimony that the Easement was created, in part, to continue the development of the Harpeth Crest subdivision into the Cypressbrook Property. The fact that Mr. Bolden did not actually purchase the Cypressbrook Property and develop it does not distract from the fact that the parties who created the Easement, *i.e.,* Mr. Bolden, as the Harpeth Developer, and Mr. Fussell, as the owner at the time of the Cypressbrook Property, intended the Easement to provide ingress and egress to the Cypressbrook Property for Mr. Fussell and his tenants *and also* for future development. In short, at the time the Easement was created, the parties contemplated the development of the Cypressbrook Property and the Easement being used to facilitate that development. Accordingly, we agree with the trial court that, "[u]nder the facts of this case, a temporary increase in traffic due to the normal development of the [Cypressbrook] Property does not constitute an unreasonable increase in the burden on the access easement."

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order granting Cypressbrook's motion for summary judgment. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Harpeth Crest Homeowner's Association. Execution for costs may issue if necessary.


      s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE